## BENNING HOOPER *vs.* JOSEPH HOBSON.

Log-owners are liable to the riparian proprietor for the actual damages caused by traveling upon the banks of a floatable stream for the purpose of propelling their logs.

ON REPORT.

TRESPASS *quare clausum* for breaking and entering the plaintiff's close in Biddeford, trampling down the grass, breaking down a bridge, driving logs in and upon the stream of water running through the plaintiff's close, and breaking down and injuring the banks of said stream.

It appeared from the evidence that the defendant, in the spring of 1868, turned into and drove down "Swan Pond Brook," so called, about a million feet of logs; that the stream averaged from two to six feet in depth, and from six to fifteen feet in width; that the defendant had thirty men at work driving his logs, who propelled them by walking on the banks; that frequently logs were rolled in from the banks with handspikes, thereby punching the soil with holes.

There was much testimony as to the capacity of the stream for floating logs, and the necessity of going upon the banks for the purpose of propelling them along where there was not much current.

There was also testimony tending to show that the damage to the plaintiff was twenty-five dollars.

The case was taken from the jury and reported to the full court, who were to decide whether the defendant had a right to drive the stream in the manner described, using the banks when necessary for that purpose.

*Wedgwood & Stone* for the plaintiff.

*Chisholm*, for the defendant, contended that Swan Pond Brook is a floatable stream, and a public highway. *Brown* v. *Chadbourne*, 31 Maine, 21. *Treat* v. *Lord*, 42 Maine, 561.

The reasonable and necessary use of the banks is incident to the public right of way. *Brown* v. *Chadbourne*, *Treat* v. *Lord*, *supra*, and *Gerrish* v. *Brown*, 50 Maine, 256. *Veazie* v. *Dwinel*, 50 Maine, 487. The action is not based on R. S. of 1857, c. 42, § § 7 and 8, relating to "lodged logs."

The defendant is protected by the common law based upon necessity and public policy, and by general and immemorial custom and usage.

BARROWS, J. It is not necessary to the proper determination of this case, to settle the question whether Swan Pond Brook, where it flows through the plaintiff's farm, is a public highway. Perhaps

it might not be difficult to do so, by carefully applying to the testi-mony here presented the legal principles laid down in *Wadsworth* v. *Smith,* 2 Fairfield, 278; *Brown* v. *Chadbourne,* 31 Maine, 9; and *Treat* v. *Lord,* 42 Maine, 552; but there is no occasion for it here and now. If it be conceded that this brook is a highway by water, in which the defendant may have a right in common with the rest of the public, still the defense is not maintained, for, according to his own showing and the testimony of his employees, the defend-ant went *extra viam,* and injured the plaintiff's grass-land, through which the brook runs, by trampling it and disturbing the soil more or less during some five or six weeks in the spring of the year, and along the whole course of the stream.

The right of the public in a stream, capable of being used for floating logs or as a passage-way for boats or barges of sufficient ca-pacity to be useful in commerce or agriculture, is not thus to be ex-tended over adjoining lands. The water makes and defines the highway. The facilities for transportation, afforded by it, are priv-ileges which, like those of air and light, are too great to be suffered to become the subjects of private property. But the exercise of the common privilege must not be made an occasion for encroach-ment upon that which is legitimately the exclusive property of an-other. The right which the public enjoy in a navigable or floata-ble stream is, in general, limited by its banks. The proper defini-tion of the word bank, in this connection, is, "a steep acclivity on the side of a lake, river, or the sea." These banks are the bound-aries within which the exercise of the common right must be con-fined. Except during the continuance of an overflow, or in the exercise of those privileges which are given and defined by stat-ute, log-owners and river-drivers have no rights in a floatable stream, beyond these boundaries. Important as their business un-doubtedly has been and is, it must be conducted with a due regard to the rights of others. Their liability to pay damages to the ripa-rian proprietor, for traveling upon the banks to propel their logs, is expressly recognized in *Brown* v. *Chadbourne,* relied upon by the defendant here. See the opinion in that case in the 31st Maine Reports, at the bottom of the 24th page *et seq.*

The dictum in the same case that "the banks of the stream may be used for driving logs" is based upon the statute privileges already alluded to, and is to be construed with reference to the statute creating them.    With regard to the use of the banks of navigable rivers, or such streams as are, from their inherent capacity, properly recognized as public highways, there is an essential difference between the doctrines of the common law and those of the civil law.

Under the latter, the public have the same right to use the banks as they have to use the river itself.

*Vide* Cooper's Justinian, Lib. 2, Tit. 1, *De usu et proprietate riparum.*

Not so under the common law.  *Ball* v. *Herbert*, 3 Term Rep. 253.

It is not, however, to be inferred that every casual landing upon the bank by those employed in driving a floatable stream, would be the ground of an action by the proprietor of the land.   The privilege of going upon adjoining lands, to remove timber lodged thereon, after tender of compensation for damages, which is conferred by c. 42, § 8, R. S. of 1857, would seem to imply that where no actual damage is inflicted in so doing, no action would lie; and that, we think, is the true extent and meaning of the dictum in *Brown* v. *Chadbourne*, above referred to, which the defendant here seeks to expand into a justification for driving this stream in a manner more convenient and economical for himself, perhaps, than any other which could have been adopted; but manifestly prejudicial to the interests of the owner of the soil.   The log-owner, who seeks privileges of this description, can obtain them only by contract with the riparian proprietor.

It is hardly supposable that anything that could properly be termed the bank of a stream like Swan Pond Brook, would afford a foothold for travelers; and in order to include the ground traversed by the defendant's employees, the signification of the word bank must be extended as indefinitely as the defendant claims to extend the public easement.    The defendant's employees seem to have traveled on the plaintiff's land, adjoining the brook, because, as one or two of his witnesses declare, "it was more convenient to go on the banks,"—"a saving of time and money."

No question arises, in this case, as to any right of using the banks of a stream which may be acquired by long and constant usage. No such usage is shown to have existed there.

The defendant, after paying one year for similar use of the plaintiff's land, and telling the plaintiff to get the damages for which this suit is brought appraised, now claims that that use is a right, incident to the enjoyment of a public highway in the course of the stream. The claim cannot be allowed.

*Judgment for plaintiff for $25 damages.*

APPLETON, C. J.; DICKERSON, DANFORTH, and TAPLEY JJ., concurred.