[ Filed June 18, 1890.]

## G. W. NUTTER, Appellant, *v.* B. GALLAGHER, Respondent.

NAVIGABLE STREAM—WHAT IS.—A stream, or water-course, in order to be navigable, must be of sufficient extent and capacity to enable the community at large to utilize it in the navigation of boats and other water-craft thereon, for the transportation of products and merchandise; or for the purpose of floating logs and timber from forests to market.

CASE IN JUDGMENT.—Where N., desiring to open a way of navigation to a certain point on a navigable tide slough, situated upon the land of G., which joined his premises, cleared away logs and brush from a gulch through which flowed a small mountain stream, deepened the same, and cut a channel therefrom through the intervening land of G. to such point of navigation, thereby opening a water-course between his premises and said point, by means of which he was enabled to float logs and small boats thereon at extreme high tides, which occur but a few days during the year; and it appearing that the communication so established was merely for the use and benefit of N. and those who might succeed him in the ownership of his premises: held, that such water-course did not constitute a navigable stream in the sense and meaning of the term as legally understood. *Haines* v. *Hall*, 17 Or. 165, approved.

APPEAL from Clatsop county: F. J. TAYLOR, judge.

The appellant brought suit against the respondent to enjoin him from erecting an alleged obstruction to the navigation of a certain slough in said county termed by him "Vincent's slough." He alleged ownership in fee and possession of the west half of the northwest quarter of section 15, township 7 north, of range 9 west, in said county; that for the last five years he had occupied said premises as a home; that they are situated about three quarters of a mile from Young's river, a navigable stream, wherein the tide ebbs and flows, and the only way the appellant can get to and from them, or can carry or transport the products of the said land to market, is upon a body of water extending from said Young's river to the said premises, called and known as "Vincent's slough," which is a natural waterway, navigable for boats, saw logs, scows and other water-craft; and that without the use thereof for such purposes, it will be impossible for him to have ingress and egress to and from the premises; that said slough has been from time immemorial navigated by the public generally in the manner aforesaid. The appellant also alleged that he was and had been for six years past the owner of a large scow and other boats, and during all that time had navigated said slough and transported thereon the products of his land and wares and merchandise to and from market; that since the commencement of the suit, a county road had been laid out and established, leading from his land down the south bank of said slough to a point on respondent's land where a bridge on another county road crossed the slough; that the road leading from respondent's land connected with the bridge, and he could transport his supplies and products to and from the land over such road to the bridge, and from the bridge upon the slough to and from market; that the water in the slough at the bridge was deeper and navigable for larger craft than on his land; that respondent was threatening to entirely close the entrance to the slough by driving in the bed thereof large

piling, and filling between with brush and other material, causing thereby great and irreparable injury and damage.

The respondent denied the material allegations contained in the complaint, and for a further answer alleged that he was owner and in possession of lots Nos. 5 and 6 in section 10, township 7 north, range 9 west, in Clatsop county, Oregon, which premises lie north of and adjoin said land of appellant, and that said slough was wholly within respondent's premises and was not subject to public navigation, but was necessary for the free use and enjoyment of his land; that said land is known as "tide land" and is only productive and useful by being diked and reclaimed; that to reclaim it he will be compelled to dike a portion of it, which diking is the obstruction complained of by appellant.

A reply was filed on the part of the appellant denying the new matter set forth in the answer.

The case was thereupon referred to J. Q. A. Bowlby, Esq., to take testimony and report the facts and conclusions of law.    The said referee thereafter made his report in which he found:  That the said parties were owners, respectively, of the said parcels of land hereinbefore referred to, and were in possession of the same as alleged; that said Young's river was a navigable stream in which the tide ebbs and flows, and that it runs a northerly course, near the said lands and east thereof; that a small stream coming from the hills flows across appellant's land and down through sloughs across the land of respondent to Young's river near by; that the tides rise in Young's river and back the water in these sloughs and this stream on to the said lands; but only high tides and winter freshets increase the depth of the water in the stream on the appellant's land; that the highest tides of summer only raise the water on the land of the latter a few inches, but the highest winter tides and freshets raise it two or three feet.    Such freshets only occur two or three times during a winter; that on said stream, and on the respondent's land about twelve rods below the south line of appellant's land, is a landing known as "Vincent's landing," to which

boats and scows run from Young's river and bring and
carry away freight; that in the years 1851 and 1869
persons ascended with boats from Young's river the said
slough and stream to a point on respondent's land four or
five rods above Vincent's landing, to where lay a large log
across the slough, now known as the "foot log." The
water there at that time was three feet deep at neap tide
and six feet deep at new moon tide. That above the foot
log, to the respondent's land, the channel was obstructed
with logs and overhanging bushes; that prior to 1878 the
channel from Vincent's landing to a short distance below
was from four to six feet wide and about the same number
of feet in depth, and high tides would fill and overflow the
channel to a depth of some two feet; that in the year 1878
the then occupant of appellant's land, with the consent of
R. Vincent, then occupant of respondent's land, cut out
the foot log and cleared the logs and bushes out of the
stream and slough, and cut away the points at crooked
places thereof, so that small boats could pass from appel-
lant's land to Young's river and return at high tide; and
about the same time the channel below Vincent's landing
was so improved that large boats, wood scows, steamers
and vessels, ran to that point; that subsequent to 1882,
appellant, with the consent of the then owners of respon-
dent's said land, further improved the channel between
his land and Vincent's landing, so that saw logs were run
down during winter freshets. He also, on high tides,
boated wood, hay and supplies on scows, seven by twenty
feet, from his place to said landing; that the appellant,
prior to bringing the suit, had no public way of getting to
market other than through this water-course, but that
since the commencement of the suit a county road had
been laid out from his land to a point on respondent's land
at or near the end of a bridge, which within the (then)
past year had been built across said slough about two rods
above Vincent's landing; that another county road crosses
said bridge connected with the road above referred to, and
ran across the respondent's land down to a navigable point

on the slough below where respondent desired to dam the water-course in controversy, which was somewhere below Vincent's landing; that said county road from the bridge to said navigable point ran part of the way on a dyke, and was not yet open to convenient travel; it cannot be traveled with a wagon; that the distance from the bridge to the navigable point was about three-quarters of a mile; that the land of respondent, through which the said water-course ran, was low and subject to overflow by high tides, and the appellant desired to dyke and dam the slough in order to reclaim it and thereby greatly enhance its value; that to dyke it so as not to cross the water-course would be more expensive than the manner proposed by respondent, and the latter would lose eight or ten acres thereof; that there were about 40,000 feet of timber which could be taken from appellant's land down the stream and water-course, besides wood and farm products, if they were kept open. Upon which said facts the referee found as conclusions of law that the water-course in controversy was navigable from the bridge to Young's river and subject to public use; that between the bridge and appellant's land the same was not subject to public use, but was the private property of respondent; that respondent had no right to obstruct said water-course below said bridge.

The said report of the referee having been duly filed, the appellant's counsel moved the court to confirm it, and the respondent's counsel moved to set it aside; whereupon the said court found as facts, that the respondent, at the time of the bringing of the suit, was the owner and in possession of lots 5 and 6 of section 10, township 7 north, range 9 west, in Clatsop county, Oregon, and that said lots were adjacent to the north boundary line of appellant's said claim; also that since the commencement of the suit a county road had been laid out from the land belonging to appellant to a point on respondent's land at or near the end of a bridge that crosses the said slough some two rods above a point thereon known as "Vincent's landing," where it connected with another county road, which ran

across the land of respondent to a point on said slough where the same was navigable, and which said point was below where respondent proposed to dike said slough; that during and since the year 1878 the occupants of appellant's land had, with the consent of occupants of respondent's land, cleared out, dug out and straightened the said slough, from below or south of said "Vincent's landing," on respondent's land, up south on to appellant's land, so that small, flat-bottomed boats could be navigated thereon at high stages of water, and logs could be floated out thereon at new and full moon tides; but that prior to such digging, clearing and straightening, when the said slough was in its natural state, it could not be navigated with boats and logs, except at extreme high winter tides, above the point known as "Vincent's landing," which point was entirely and wholly upon respondent's land, and could not be reached from appellant's land by any public highway nor otherwise than by crossing the land of the former. And the said court thereupon set aside all the findings of fact of the said referee inconsistent with its findings of fact as above set out. Said court also set aside the conclusions of law as found by the referee, and instead thereof found the following: "That Vincent's slough is not a navigable slough above the point known as 'Vincent's landing,' and that, therefore, plaintiff is not entitled to the relief prayed for in his complaint; but that this suit should be dismissed."

Upon this finding of facts and law by the court, a decree was rendered dismissing the suit, at the cost of the appellant, which is the decree appealed from.

*George C. Fulton,* for Appellant.

*F. D. Winton,* for Respondent.

THAYER, C. J., delivered the opinion of the court.

The main question in this case is whether the respondent, at the time of the commencement of the suit, was obstructing and threatening to obstruct a navigable water-

way leading from appellant's land across the land of respondent into what is known as "Young's river." The testimony bearing upon the question is rather voluminous but extremely vague upon some of the material points in the case.

The appellant contends that a certain slough, known as "Vincent's slough," extends from his land, either directly to Young's river or into other sloughs connecting with it, constituting an uninterrupted course of navigable water from his premises to said river, which is admitted to be a navigable stream.

It appears that said Vincent's slough extends across a part of respondent's land south toward the land of appellant, and that a slough or gulch, in which flows a small stream of water, runs from the appellant's land into it; but that ordinary flood tides reach the appellant's land through said slough or its branches, is strongly controverted by the testimony of the respondent.

It does appear, however, that the appellant, his grantors and predecessors, opened a channel from said slough or gulch upon his land into said Vincent's slough at a point known as Vincent's landing, by clearing the logs and brush from the gulch, deepening the channel thereof, and cutting a channel or ditch through solid ground, and that he used the same at extreme high tides to float saw logs from his premises to said slough at said point, and for other purposes, as found by the circuit court in its findings of fact. Whether this improvement of the channel renders Vincent's slough navigable from appellant's land to Young's river is, as I understand, the real point in issue between the parties. The circuit court decided that Vincent's slough was not a navigable slough above Vincent's landing, and I think its conclusion upon that point was clearly correct.

This court in *Haynes* v. *Hall*, 17 Or. 165, held "that the doctrine that a stream of water is navigable if of sufficient extent and capacity to float logs and timbers from mountainous regions to market, and might thereby be utilized

for the benefit and advantage of the community at large, could not be extended so as to include small streams of only a few miles in length, although they rise during a few weeks in the year sufficiently high to be used to a limited extent by the application of artificial means, to float logs and timber a short distance." In the present case the stream or water-course from appellant's premises to Vincent's landing was only a few rods in distance, and between those two points it had no capacity for general purposes of navigation. No one but the appellant can utilize it, and he cannot only for a few days during the year. There is no pretense that it can be of the slightest service to the public generally, or that it was intended to be so. Those who made the improvement did so for the sole benefit of the owners and occupants of the land now belonging to appellant, and if it were done with the consent of the owners of the land now belonging to respondent, it would only amount to a temporary license, as a permanent right in favor of the appellant to maintain such a channel across the land of respondent could only be created by grant, or by prescription, which presumes a grant. If the question, therefore, whether the appellant's right to have the respondent enjoined on account of the matters alleged in the complaint, depends upon the navigability of the slough from Vincent's landing to appellant's premises, he must necessarily fail. But whether or not that is a vital point in the case, I have been unable to learn from the pleadings, proofs and findings referred to in the foregoing statement. They vaguely hint that the respondent is diking his land somewhere below said landing; in what manner, however, he is doing it, or at what particular locality it is being done, does not appear. If he is doing the diking in such a manner that it will obstruct the navigation of the slough to said landing from points below there, he is doubtless doing a wrong; but that fact, so far as I can discover from the transcript, is in the dark. The circuit court, it appears, dismissed the appellant's complaint upon the ground that the slough was not navigable above Vincent's landing, and

in the absence of any showing that the diking would interfere with its navigability or with the rights of the appellant, we must conclude that it would not affect either.

Hence the decree appealed from must be affirmed.