Argued November 26, decided December 16, 1913.

# LEBANON LUMBER COMPANY v. LEONARD.*

### (136 Pac. 891.)

**Navigable Waters—What Constitute—Capacity for Floating Logs—"Navigable."**

1. The test whether a stream is "navigable" for the purpose of floating sawlogs is whether it is inherently and in its nature capable of being used for the purposes of commerce, and it is sufficient if it has that character at different periods, recurring with reasonable certainty, and continuing long enough to render it beneficial to the general public; but it is not sufficient that the stream can be made to float logs for a few hours during a freshet.

> [As to what waters are navigable, see note in 126 Am. St. Rep. 710.]

**Navigable Waters—Rights of Public—Rights on Adjoining Land.**

2. Where the bed and banks of a stream are owned by the riparian proprietors, its navigability does not give the navigator a right of way over the land, as that can be acquired only by exercise of the power of eminent domain.

> [As to relative rights of public and of riparian owners in navigable waters, see note in 127 Am. St. Rep. 740.]

**Navigable Waters—What Constitute—McDowell Creek.**

3. McDowell Creek, one and one half to three feet deep, and twenty to thirty feet wide in ordinary freshets, very tortuous, and claimed to be floatable three or four times a winter during freshets lasting from one to five days, but not recurring at regular periods, and it being necessary to have men on the banks to float the logs, is not navigable for sawlogs.

**Logs and Logging—Use of Streams—Obstruction—Damages.**

4. Where there is no evidence of specific damages from the floating of logs in a non-navigable stream across defendant's land other than the taking away of a few feet or inches from the bank much of the way across the place, the court will allow only nominal damages in the sum of $50, and enjoin the plaintiff from further placing logs in the stream for floating.

From Linn: WILLIAM GALLOWAY, Judge.

Department 2.   Statement by MR. JUSTICE EAKIN.

This is a suit by the Lebanon Lumber Company, a corporation, against Arabel D. Leonard, Martha M.

*On the question of the right to use stream for driving, floating or rafting logs, see note in 41 L. R. A. 371.                REPORTER.

Treat and Fred Deffenbacher, to enjoin defendants from interfering with the plaintiff's floating sawlogs down McDowell Creek to the Santiam River. There was a decree for the plaintiff and defendants appeal.

REVERSED: DECREE RENDERED.

For appellants there was a brief over the name of *Messrs. Weatherford & Weatherford,* with an oral argument by *Mr. James K. Weatherford.*

For respondent there was a brief over the names of *Mr. Samuel M. Garland* and *Messrs. Hewitt & Sox,* with an oral argument by *Mr. Henry H. Hewitt.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The only question involved here is whether McDowell Creek is a navigable stream for the purpose of floating sawlogs. The question of what constitutes a stream a floatable one has been before this court frequently. One of the first cases in which the question is thoroughly considered is *Haines* v. *Hall,* 17 Or. 165 (20 Pac. 831, 3 L. R. A. 609), in which it is held: "It is enough if it has floatable capacity at certain periods [of the year], recurring with regularity, and continuing a sufficient length of time to make it useful as a highway for floating logs. * * But a stream to be navigable in this sense must be capable of such floatage as is of practical utility and benefit to the public as a highway for trade, or, as has been said, 'to float the products of the mines, the forests, or the tillage of the country through which it flows to market.' " This definition emphasizes the fact that the use of the stream must be practical to the public. It is not sufficient if one man or corporation may be able to make use of it. The land under the water is private property, and only the right to use the water as a

means of transportation and the stream as a highway for that purpose is involved here. The right of navigation of streams unaffected by the tide was at first based upon the theory of prescription; but that theory has been abandoned as not applicable to the streams in this country. Large streams are considered nature's highways without the aid of legislation. This is especially recognized as true where they have been reserved from private ownership by the national government or by the state. In the admission of Oregon as a state Congress provided that all navigable waters therein should be common highways and forever free to the inhabitants of the state, and later this right in the public was recognized by the courts as extending to small streams the beds and banks of which are claimed by riparian owners. Gould on Watercourses, Section 107, in discussing this matter, says: "The authorities agree that the streams which in their natural condition are only useful for rafting purposes, during the whole or a part of each year are highways for that purpose, and the title of the riparian owners to the beds of such streams is subject to this right of passage." And at Section 109 it is said that to be floatable the stream must be capable of floatage, as the result of natural causes, at periods ordinarily recurring from year to year and continuing for a sufficient length of time in each year to make it a useful highway. The mere possibility of occasional use during a brief or occasional freshet does not give it a public character; but, as said in *Kamm* v. *Normand,* 50 Or. 9 (91 Pac. 448, 126 Am. St. Rep. 698, 11 L. R. A. (N. S.) 290), streams which are not of sufficient size and capacity to be profitably so used are wholly and absolutely private. The true test, therefore, to be applied in such cases is whether a stream is inherently and in its nature capable of being used for the purposes of commerce, for the floating of vessels, boats, rafts

or logs. It is sufficient if it has that character at different periods, recurring with reasonable certainty, and continuing for a sufficient length of time to make it commercially profitable and beneficial to the general public. But every small creek or rivulet in which logs can be made to float for a few hours during a freshet is not a public highway. It must at least be navigable or floatable in its natural state, at ordinary recurring winter freshets long enough to make it useful for some purposes of trade or agriculture. The law in regard to floating sawlogs is fully reviewed by Mr. Chief Justice BEAN in the case last cited, resulting in the conclusions we have adopted above.

2. Where the bed and banks of the stream are owned by the riparian proprietor, the navigability of the stream does not give to the navigator a right of way on the land. That can be acquired only by the exercise of the right of eminent domain. In case of the navigation of such a stream, the navigator may find it necessary at times to enter upon the land of a riparian owner by reason of danger, or to reclaim stranded property which was washed ashore without the fault of the owner, but he must pay all damages occasioned thereby; otherwise he is limited to the stream. Gould on Waters, Section 99, says: "The right of navigation ceases * * at the water's edge. * * The public have, therefore, as against the riparian owners, and as incident to the right of navigation, no common-law right to use the land adjoining a river above high-water mark. * * Those who travel upon the banks of streams for the purpose of propelling their logs are liable in trespass to the owner of the banks." And at Section 108 it is said: "If the stream is so small and shallow that logs cannot be driven in them without traveling upon the banks, it is not open to the public for passage."

3. In view of the law as thus stated, it is clear that McDowell Creek is not navigable for sawlogs. It is a small stream having a depth of one and one half to three feet during ordinary freshets, is twenty to thirty feet wide, is very tortuous, having eight or ten very abrupt bends in its course across defendants' land, which is about thirty chains wide. It is claimed to be floatable for probably not more than three miles above its mouth, and flows about forty-four cubic feet of water per second. Plaintiff's principal witness says that the freshets last from one to five days. Other witnesses say from one to two and one half days. These freshets occur three or four times during a winter, but not at regular periods. Twelve hours of warm rain will bring such a freshet. Plaintiff has to depend on his men in the logging camp to float the logs, for the reason that it has no warning of the flood in time to send men from the mill. If the stream were otherwise sufficient to float sawlogs, the high water is not of sufficient regularity or duration to be of practical public utility. As plaintiff put its logs into the stream in January, no other person could have had access to it up to the time of the trial in May, for the reason that it left a jam of logs in the creek at the upper side of defendants' land and on the banks all along the creek, to the number of about 500, which obstructed the creek. The right to use a stream for floating does not include the use of it for storage from one freshet to another or during the summer months. Therefore this creek certainly is not of public utility as a floating stream. Plaintiff also claims the right to have men upon the banks to float the logs, practically conceding that it is not possible to float a large quantity of logs without the use of men on the banks to keep the logs in the stream and moving.

We find that the stream is not a navigable stream for floating logs, that plaintiff was not entitled to an

injunction against the defendants, and that the injunction should be dissolved, and the complaint dismissed.

4. Defendants by their answer contend that the acts of plaintiff were trespasses upon their land, and aver that it is threatening to continue floating logs in the creek, and that in its attempt to float the logs it has caused them irreparable damage, asking judgment for damages in the sum of $1,000, and that plaintiff be perpetually enjoined from attempting to float logs in the creek over their premises. It appears that the acts of plaintiff were causing the destruction of the banks of the creek and the carrying away of the soil; but there is no evidence of specific damage other than the taking of a few feet or inches thereof from the banks of the creek much of the way across the place. We have no data by which to compute the amount removed. Therefore we will allow only nominal damages in the sum of $50 and adjudge that the plaintiff be perpetually enjoined from further placing logs in McDowell Creek for the purpose of floating, and from attempting to so use said stream across defendants' premises.

The decree is reversed and one is entered here for defendants.      REVERSED: DECREE RENDERED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE McNARY concur.