[Cuyahoga County Circuit Court, September Term, A. D. 1894.]

Baldwin, Caldwell and Hale, JJ.

† CHARLES A. GATES, ADMINISTRATOR v. THE TIPPECANOE STONE CO. ET AL.

1. Where a corporation is organized with five directors, three of whom sell to the corporation property at twice its value in full payment of stock by them taken in the corporation at the time of the sale, and the corporation becomes insolvent, the creditors can compel them to pay the difference between the face value of the stock and the value of the land at the time of the sale.

2. If a stockholder sells stock representing it to be fully paid up, when it was not; as between him and his vendee he is primarily liable for the debts of the company contracted while he held the stock.

CALDWELL, J. ( orally ).

The Tippecanoe Stone Co. was formed about March, 1887. Before the formation of the company, James H. McLain, William Thornbrook and Oscar Townsend, owned some stone mines on which they had opened a quarry and were working the mines. They undertook and accomplished the turning of this property or this partnership firm into a corporation. The corporation continued to quarry stone at this stone quarry until sometime in 1889, when it became insolvent and went into the hands of an assignee. The creditors, many of whom lived in this county, commenced proceedings to subject the statutory liabilities of these stockholders upon their stock. During the progress of that case the assignee of the Tippecanoe Stone Company came into it, and brought into the case this question, that these stockholders, who had been the members of the partnership existing before the corporation, had paid for their stock by turning in the property which they owned, at a very exorbitant price; and that the stock, by reason of the exorbitant price, was not wholly paid-up stock, although issued to them as such; and that he should receive a judgment for the unpaid amount on the stock.

The case was referred by the court of common pleas, and the referee made certain findings of facts and of law, and found that these stockholders should pay fifty per cent on the stock that they had received; that the property was worth not more than one-half of what it was turned in for in payment of the stock, and that they should pay the difference; and he recommended that the common pleas court appoint a receiver to take this amount on the stock and disburse it to the creditors.

The court of common pleas reversed the opinion of holding of the referee that a receiver should take the money and disburse it to the creditors, and held that the assignee of the corporation had the right to receive the money and disburse it. And to this holding of the court the creditors excepted, and brought a petition in error in this court to reverse that holding of the court of common pleas.

William H. McLain was one of the partners, and turned in one-half of the property to form the capital of the corporation. A judgment was rendered against him by the court of common pleas of over $13,000, the court holding that he was under legal obligation to pay to the creditors the difference between the value of the property turned in as payment of his stock, and the face value of the stock. McLain filed a petition in error in this court.

The case came on for hearing under the petition in error filed by the creditors. At that time it was not known that there was any other petition in error; the second case was not yet docketed in this court. We determined the law of the first case as to whether the court of common pleas should have appointed a receiver to take the funds, or whether the court

---

†The judgment in this case was affirmed by the supreme court, see opinion 57 O. S., 60.

of common pleas should have allowed the funds to go to the assignee of the corporation; and that is not in issue here now. I mention it only for this reason: It is claimed now upon the hearing of this case that the matters here sought to be adjudicated were adjudicated in the former trial in this court; but from the facts we have already stated, it appears clearly that we did not in that case decide whether the court of common pleas erred in its holding in adjudging that the persons who paid for their stock, in property, must now pay the difference between the property turned in and the face value of the stock. That question was not decided. It was not before the court. That being the case we hold that this matter has not been adjudicated in this court.

In the next place it is objected in this case that Gates, the administrator of McLain, took no exceptions in the court below at any point during the trial of this case before the referee or before the court of common pleas. He is here, satisfied with the findings of fact by the referee. Whether he is or not, he must be. He filed no motion for a new trial in the court below, and he is not in position to dispute the findings of fact of the court below. They are such findings as he wants in the matter. But he says that upon the findings of fact by the referee the court applied the wrong principle of law in holding these parties responsible for unpaid subscriptions; and he says the court of common pleas, in rendering judgment, rendered the wrong judgment on the facts. There is nothing that this party could have excepted to. He might have excepted to the findings of law by the referee, perhaps, in order to have raised the matter before the court of common pleas. But the findings of law were nothing more than a charge to the jury, and findings of fact by the jury.

If the court has rendered upon these findings of fact the wrong judgment, then exception is not necessary to review that judgment. This has been repeatedly decided, and it is not necessary to refer to decisions in this state to the effect that to a final judgment which a party seeks to reverse, it is unnecessary to take exceptions. It is reviewable without. That being the case we find that this matter must be heard, and must be determined by us as a new question in this case, as to whether the court erred in rendering that judgment. Now it is unnecessary to mention all the facts found; only one additional fact may be named that was found by the referee, and that is this: That the parties who formed this corporation, and who paid for their stock with property, which property was put in at a double valuation, in so doing had no intent or purpose to cheat and defraud any one. It is contended that where that fact exists, unless the difference between the value of the property and the value of the stock issued for it is very great, or the property is worth almost nothing, that a court will not interfere; or that, unless fraud exists or is inferred from the facts—unless fraudulent intent or purposes exist and are clearly inferable from the facts of the case, the court cannot disturb the arrangement made between the corporation and stockholders; that it is based upon contract, and the court has no right to destroy that contract, and then make for the parties a contract that they never made for themselves. Many courts in this country have held that for this reason a court cannot set aside the contract arrangement that the stockholders of a company have made, and require the parties to pay in full value for their stock; that it would be making for the parties a new contract. We have had cited to us a case in 139 U. S., one in 119 U. S., one in 125 New York, and a great many other cases that hold this doctrine. But there is another view taken by courts in this matter, and that is this: That a corporation holds its stock in trust for the creditors of the company, and that when one puts his name down on the stock subscription book for so many shares, such subscription is at the face value of the stock; that then the company, when it undertakes to allow him to pay in some kind of chattel or real estate worth only one-half the face value of the stock, it so far violates its trust which it owes to the creditors, and so far surpasses the duties and obligations of a trustee, that if the company becomes insolvent, the creditors can come in and enforce the trust, and the contract that the

party has made, viz.: That he will take so many shares of the capital stock of the company and pay for its face value. This, of course, is founded somewhat upon the further principle that a corporation has no right to sell or dispose of its stock for less than its face value.

These two views have been held by different courts, and to undertake to reconcile them would be a task too extensive and too burdensome for us at this time, if it can be done at all. There is a little matter that was not mentioned upon the argument of this case. It appears that in looking at these findings of fact that are before us, that three persons owned this entire amount of property; that the entire sum of $75,000 capital stock of this company was paid by turning in this land, and that no other payment was made on any of these shares of stock. At the time of the organization of this company it appears clearly from this report, although not in express findings, that there were but five stockholders at the time the contract was made, and that McLain was one of these stockholders. According to section 3244, Revised Statutes, no company can have less than five directors, so that it appears in this way that McLain must have been one of the directors of this company.

The finding of the referee is that this stock was purchased for one-half its value, and that McLain purchased a large part of it; and that he paid fifty cents on the dollar for his stock.

It is a very sound rule that the persons who have the control and management of the corporation, when they undertake to deal with that corporation, shall not deal unfairly. A corporation can deal only through its officers, the directors; and dealing with the directors of a corporation, the directors in a sense deal for the corporation and for themselves also; and the law is that they shall not do what these parties undertook to do in this very case, viz.: Buy their stock for one-half of the face value thereof. If the corporation had come in and undertaken to set aside this matter; if these persons who made this deal were all directors, then undoubtedly the court would have set it aside as being made in bad faith. May not the creditors say to McLain: You have held yourself out as a stockholder; you are now estopped from saying you were not a *bona fide* holder of these stocks at their face value, and agreed to pay face value for them. That being the case they want now to compel these parties to pay what the face value of this stock is, and not the sum which they did pay. The contract made is this: These three stockholders, at a time when they composed a majority of the board of directors, sold to the company the property at double its value in payment of their stock in full. They contracted for themselves and the company. About the same thing as a man making a contract with himself. The stock of a company sold is intended to convey to the creditors a pretty definite idea of the amount of capital of this company. If it is not fraud in fact, it has at least a tendency to deceive and mislead creditors. It is unfair dealing. Those who make this unfair dealing—especially if they are directors—will be held accountable for the amount they have made to appear they paid for the stock, its full value. This view, it seems to us, is a very reasonable one of this matter. There is no question, and it is unnecessary to cite authorities, to show that the company holds this stock in trust for the benefit of its creditors. That has been so often established that it has become elementary in law.

The circumstances of this case are peculiar. Here was a corporation, but the very persons who represented the corporation were dealing for themselves with that corporation. They were acting for themselves. It seems that if, under such circumstances, they took advantage of the corporation and did not deal fairly with it, the court is justified in enforcing the trust. It should be enforced under the circumstances of this case. What view of this matter has our Supreme Court taken? We may refer to the case of *Henry and another* v. *The Vermillion & Ashland Railroad Company et al.*, 17 O., 187. This was an action on behalf of creditors to subject stockholders to the payment of their unpaid subscriptions. Some of the stockholders set up that they had an agreement with the corpora-

tion that their stock should be paid for in something besides money, either in land or goods—I think it was in goods. There was no finding of bad faith in making the contract, nor was it necessary. The Supreme Court on page 19 says: "'Stockholders who have attempted to secure by agreement a privilege of paying up their stock subscriptions in goods, or otherwise except in money, as contemplated by the charter, will not be allowed the benefit of such stipulations; such an agreement will be considered a fraud upon other stockholders, and the amount due must be collected in money."

Now, notwithstanding the referee in this case found that there was no actual fraud contemplated by the parties at the time they did this, yet the Supreme Court seems to say that although they did not contemplate any fraud in doing this, yet they have actually committed a fraud in law upon the creditors of the company, or upon the other stockholders, and therefore it will not be allowed to stand. In another case in our state, *Warren P. Noble, administrator*, v. *George T. Callendar et al.*, 20 O. S., 199, a party subscribed for stock with the agreement that he would pay for it in land. He agreed to turn over to the company in payment for his stock eighty acres of land, and the subscription was received by the company upon this promise. Here is one of the findings in the case: "At the time subscription was made the committee and Cronise believed they had the right to take the subscription payable in land; that such a contract was legal and binding, else Cronise would not have made the subscription, as he refused to subscribe on any other condition." The court, in considering this case, gave this opinion: It was a motion for leave to file a petition in error in the Supreme Court—"The motion must be overruled. Whatever should be the effect of this collateral agreement as between the subscriber and the company, it is quite clear to us that as between him and the creditors of the company, or as between him and his co-stockholders, he cannot be allowed to set it up to their prejudice." The court refer to the case in the 17th Ohio, 187.

These were both agreements to pay in a certain way, and in the 20th O. S. case, the findings were that the party refused to subscribe on any other terms than that he should pay for the stock that was to be given to him with the eighty acres of land. It is found that the eighty acres was not worth more than one-half the face value of the stock, and the stock, at the time he made the subscription, was not worth in the market more than 70 cents on the dollar; and very soon thereafter, and before the arrangement was carried out, the stock was entirely worthless. The Supreme Court say he cannot avail himself of that agreement, and he must pay $1,600.00, the difference between the value of the land and the face value of the stock.

Many courts have held that a corporation cannot dispose of its stock for less than its face value. It is unnecessary for us to say anything about this in this case. We are clearly of the opinion, in view of these cases in the Supreme Court—the inference to be drawn from these cases is—that a corporation owes to its creditors a trust, and violates that trust when it allows stock subscribers to pay for stock in lands, or goods, at less than its true value. That being so we must determine this question by saying that the court below did not err.

. McLain, after these debts were contracted, sold some of his stock. The common pleas court adjudged that upon the stock sold where the debts were contracted before the selling of the stock, McLain was primarily liable, and the person to whom he sold was secondarily liable. It is claimed this was error. In looking over the findings of the referee it appears that he found as a fact that the person who bought this stock bought it as fully paid-up stock. If that was the contract arrangement between them, the decision is correct, and McLain must pay up to make the stock fully paid, and is primarily liable, and the other secondarily. Of course, whether or not the purchaser can be held, is not before us. We do not determine it. No complaint is made here except by the repre-

sentative of McLain. We think under the facts of the case the judgment was correct. The judgment of the court below is affirmed.

*Day, Lynch & Day*, for the Plaintiff.

*Hoyt, Dustin & Kelly; Boynton & Horr; Estep, Dickey, Carr & Goff; W. H. Boyd, Esq.; Henderson, Kline & Tolles; D. A. Hollingsworth, Esq.; Judge J. H. McMath*, and *A. D. Barnes, Esq.*, for the Defendant.