GUSTAVE ANDERSON v. THE THUNDER BAY RIVER BOOM CO.

[See 57 Mich. 216.]

*Flowage of land—Declaration for injuries to three descriptions, composing plaintiff's farm—Evidence of title to a specified portion of one of the descriptions, admissible—If recovery confined to damage done to such portion defendant not prejudiced—Where injuries are shown, caused by jams of logs accumulating below and in front of plaintiff's land—Burden of proof on booming company to show actual condition of logs and water—And its efforts to prevent the overflow by moving the logs—It is the province of the jury to determine as to necessity of such jams of logs—Evidence of death of the flooded portion of plaintiff's orchard, and the thriving condition of balance—Has legitimate tendency to prove that the trees were destroyed by the flooding complained of—Booming company—Has right to run logs down a river as a natural highway—Not liable for damage to riparian owners if water is not thereby raised higher than if logs are moved down on natural current and surface—Such injury an incident to use of stream in its natural condition for the purposes of such floatage—If evidence tends to show that such running of logs caused an unnatural rise in the water—Thereby damaging plaintiff—Question of defendant's liability is for the jury.*

1. On the trial of a suit brought to recover damages for the alleged *negligent* flooding of plaintiff's land, described in his declaration as lots 1, 2,

and 3 of specified sections, a deed to him of a *distinct* portion of lot. 1 was offered and received in evidence, against the defendant's objection of a want of allegation of injury to ·such *particular* portion of the lot, or to the crops growing thereon, the declaration referring to· the *entire* lot as a portion of plaintiff's farm composed of the *three* descriptions.

*Held*, that the deed was properly admitted; that under the declaration plaintiff could prove that he owned a *portion* of the premises therein described, and if his recovery was *confined* to the damages· done to *such portion* the defendant was not prejudiced.

2. In a suit against a booming company to recover damages sustained by floods caused by jams of logs accumulating in the river operated by defendant below and in front of plaintiff's lands, the burden of proof is upon the defendant to show the *actual* condition of the *logs* and *water*, and what was done to move the logs and prevent the overflow complained of, and it is for the *jury* to determine whether or not there were *unnecessary* jams causing such flowage and damage.

3. In a suit to recover damages for the alleged *wrongful* flooding of plaintiff's lands he was permitted to show that a portion of his orchard was overflowed, and that the trees therein withered and died, while those in the balance of the orchard, it being in a body, were alive and in a thriving condition.

*Held*, that the evidence was competent and relevant to the issue, having a plain and legitimate tendency to prove that the trees were destroyed by the flooding complained of.

4. A booming company has a right to navigate a river, by running logs down the same, as a natural highway for that purpose, and if in so· doing the water in the stream is not caused to rise higher than it would have done by reason of the logs moving down upon its natural current and surface, any injury done to riparian owners is an incident to the use of the stream in its *natural* condition for the purposes of such floatage.

5. Where there is evidence in a case tending to show that a booming· company, by its action in running logs down a river, caused an *unnatural* rise of water, thereby damaging the plaintiff,—

*Held*, that the question of defendant's liability was properly submitted to the jury.

Error to Alpena.    (Emerick, J.)    Argued April 27, 1886. Decided June 10, 1886.

Case.    Defendant brings error.    Affirmed.    The facts are· stated in the opinion.

*George H Sleator* (*R. J. Kelley*, of counsel), for appellant:

The allegation in the declaration that plaintiff was lawfully possessed of lot 1 was a descriptive one, and having only shown his right to the possession of a *portion* of the lot, he cannot recover for damages done to said lot or any part thereof: 1 Greenleaf on Ev. § 62; *Buddington v. Shearer*, 20 Pick. 478; *Jerome v. Whitney*, 7 Johns. 323; *McFarlane v. Ray*, 14 Mich. 470; 1 Chitty on Pleading (16th ed.) * 252.

Although negligence is a question of fact for the jury, it is not to be presumed in the absence of testimony, but must be affirmatively proved: *M., H. & O. R. R. Co. v. Kirkwood*, 45 Mich. 52; *Brown v. Congress & Baker St. Ry. Co.*, 49 Id. 153; *Mitchell v. C. & G. T. Ry. Co.*, 51 Id. 236.

*Turnbull & Dafoe*, for plaintiff:

Defendant was liable for all damage caused by jams of logs that remained in the river at and below plaintiff's premises for two weeks and upwards: *Booming Co. v. Jarvis*, 30 Mich. 310; *Log & Booming Co. v. Nelson*, 45 Id. 582; *Watts v. Boom Co.*, 52 Id. 203; *Weaver v. Boom Co.*, 28 Minn. 534.

MORSE, J.   This is an action on the case, brought by the plaintiff as owner and occupant of certain parcels of land bordering on the Thunder Bay river, to recover damages which he alleges he has sustained by means of the booms and dams of the defendant, and its negligent and improper management of the logs committed to its charge for booming purposes.

The case has been in this Court once before, and will be found reported in 57 Mich. 216.

The lands were described in the declaration as lots Nos. 4 and 5 of section 31, in township 32 N., of range 7 E.; and lot 1, in section 32, in township No. 32 N., of range 7 E.

Upon the trial the plaintiff introduced, without objection, as showing his title to the premises, patents running from the State of Michigan to himself of lots 4 and 5, and also a State patent of lot 1 running to one Gideon Ellsworth.

He then offered in evidence the record of a quitclaim

deed from said Gideon Ellsworth to himself of a portion of the aforesaid lot 1.

Defendant's counsel objected to its introduction, because there was no allegation of injury in the declaration to this particular portion of lot 1, or the crops growing thereon; that the declaration referred to the whole of the lot, and was not specific enough to admit the evidence of this deed under it.

The deed was admitted, and we think properly. Under the declaration the plaintiff could prove that he owned a portion of the premises therein described, and if his recovery was confined to the damages to that portion of the premises to which he proved title, no harm or prejudice could result to defendant.

The plaintiff's evidence tended to show that he had been in possession of these lands about fourteen years; that he had cleared a portion of the premises, and was engaged in farming. The defendant is a corporation organized under the laws of our State, and has been doing business as such for several years. Its business consists in the driving, booming, sorting, and delivery of logs in the waters of Thunder Bay river. The plaintiff's farm was flooded in the spring and summer of 1883, and a large quantity of logs left upon his land. The defendant had control of all the logs in the river, from its mouth up to a point known as the "Speechley Dam," about four miles above the plaintiff's premises. The defendant also had control of the Trowbridge dam, some three or four miles below the plaintiff's land.

The testimony upon the part of the plaintiff also tended to show that defendant, in the spring of 1883, caused and permitted solid jams of logs to be formed in the river in front of and below the premises of the plaintiff, and to there remain from four to six weeks; that these jams of logs caused the water in the river to rise, and flood the plaintiff's lands, causing him damage; and that when these jams were moved and broken up they tore out and destroyed a portion of the land in front of plaintiff's premises; that his damages consisted in the loss of crops, destruction of dock, damage to

and loss of articles in his cellar, and the killing of a number of apple trees.

The plaintiff recovered, in the court below, $375 damages.

The defendant introduced the testimony of Hollis B. Marsh, who gave in evidence that he was the superintendent of the boom company, and that in 1883 the company handled about 180,000,000 feet of logs during that season ; that they received these logs out of the North and South branches of the river, over the Speechley dam ; that the defendant had no control of the logs until they came over the said dam ; and that the company could not prevent the owners of the logs from driving them into the boom company's limits ; that the defendant had, all the season, and used, a sufficient force of men and appliances to move the logs down stream as fast as they could be run, in the ordinary course of navigation of the stream.

Then the two following questions were asked of the witness, objected to, and ruled out by the court :

" 1. State whether or not, in the year 1883, the boom company stored or jammed logs, and by that I mean filling the river full above the Trowbridge dam, up to and past the plaintiff's place, before or while there was any opportunity to send logs forward over the Trowbridge dam, on account of the rapids being jammed, and no channel through it."

" 2. State what other means, if any, there were for navigating that stream, and bringing the logs forward over Trowbridge dam, except through and over these rapids, after a channel had been picked through."

If there was any error in the rejection of these questions, it was subsequently cured, as the witness was permitted to testify, as shown by the record, as follows, which substantially covered the ground of these proposed inquires :

" Witness further gave evidence tending to show that that part of the stream designated as 'rapids' is below the Trowbridge dam ; that in the spring of the year they would pile up, if not interfered with by the company, in some places ten feet, in some twenty, and some thirty, high ; that about 75,000,000 feet of logs will jam on these rapids ; that when in this condition the stream cannot be navigated until a chan-

nel is picked through; that in the spring of 1883 the defendant used all the force and appliances that could be successfully used to open a channel through said rapids in the shortest possible time; that during the year 1883 logs were not detained in the stream above the Trowbridge dam for any other purpose than to enable the opening of this channel through the rapids; that as soon as this was done the space above was relieved, and the logs turned over the dam as fast as the stream could reasonably navigate them; that during the time this channel was being picked through the rapids defendant could not prevent the owners of logs from putting them into the stream above the Trowbridge dam; that the Trowbridge dam will not back water more than half way over the Ellsworth rapids, which is a mile and a quarter below the plaintiff's premises; that in June, 1883, there was an unusual freshet that raised the water in this stream above its ordinary height; that during this freshet the Speechley dam was opened, and let down a large quantity of water; that it was during this freshet that logs went on the plaintiff's premises; that without this freshet plaintiff's premises would not have been flooded."

Another question was asked,—if any unnecessary jams of logs were formed, or permitted to remain, in the river at or in front of plaintiff's premises, or below, which occasioned the rising of water and the consequent overflow of the land.

This question was properly excluded as calling for the conclusion of the witness. It was for the defendant to show the actual condition of the logs and of the water, and to state what was done to move the logs and prevent the overflow, and then it was for the jury to determine whether or not there were unnecessary jams causing the flowage and damage.

We see no error in showing of what persons the boom company was composed, or where they resided.

The plaintiff had an orchard upon his premises. Three rows of these trees were flooded. The trees that were flooded, withered and died. He was permitted to testify that the balance of the trees in the orchard, not flooded, were alive and doing nicely.

It is claimed that it was not competent to show the condition of the trees not reached by the flood, as there was no

evidence to show that the soil was of the same character or that the trees were upon the same level of ground.

We think the evidence was proper.   The plaintiff showed that his orchard was in one body, composed of 150 trees, twelve and nine years of age.   A flood is shown, immersing a certain portion of this orchard.   After the subsidence of the flood, the trees embraced within its limits wither and die, without any other apparent cause.   As bearing upon the question as to whether or not this injury caused their death, it was certainly competent and most relevant to show that the trees in the same orchard, untouched by the flood, were unhurt, and now alive and in good condition.   It had a plain and legitimate tendency to prove that the flood destroyed the others.

The defendant's counsel requested the court to instruct the jury that, under all the testimony in the case, the plaintiff could not recover; and that the plaintiff had not shown any negligence on the part of the defendant in the management or control of the logs delivered to its care, or of its business, during that season of 1883.

It is contended by the counsel for defendant that the undisputed evidence shows that below the Trowbridge dam there were about three miles of rapids, and that the natural condition of the river was such that without the Trowbridge dam the logs would jam and pile upon these rapids, and fill the entire space between them and the Speechley dam; that with the aid of this dam, which never backs water higher up than to within a mile of the lower portion of plaintiff's premises, a far larger quantity of logs can be driven forward, and piled higher upon these rapids, without flooding the premises lying along the river above the rapids, than can be without it.

The court instructed the jury, substantially, going fully and fairly into the details of the condition of the logs and the river, as claimed by both parties, that if the defendant accumulated, or allowed to accumulate, a large mass of logs in the stream above the Trowbridge dam, and that thereby, and for that cause alone, the water was flooded back upon plaintiff's premises, and the damage complained of occasioned;

that the natural flow of the river was thereby impeded, and the water and the logs thrown upon the plaintiff's land,—he would be entitled to recover such reasonable damages as he had sustained thereby, but he would not be entitled to recover for the water being raised, or the logs floated, upon his premises, except as it was caused by the acts of the defendant in accumulating these logs, or permitting them to accumulate and remain, in jams. And, in other words, that the defendant had a right to navigate this river, and move the logs down it, as a natural highway for that purpose; and if, by its action or non-action in the premises, it did not cause the stream to rise higher than it would have risen had it not been interfered with by the defendant; and if it did not flood the land of plaintiff any more than it would have done in the natural flow of the logs down stream, without any tampering with the stream or the logs by the defendant,—then the plaintiff could not recover; that the company had the right to use the stream for the floatage of logs, and if the logs so put into the stream under this right, and moving down it upon its natural current and upon its natural surface, should flood any person's premises, or tear away any portion of his land, it would be an injury that he must suffer without remedy, as an incident of the right to use the natural stream for the purposes of such floatage.

The court sufficiently stated the law. The booming company had no right, by using this dam, or neglecting to pick a channel below, to increase the damage to the plaintiff over or above what would be incident to the ordinary and natural course of navigation.

There was evidence tending to show that the company, by its action that season, raised the water higher than it would have risen naturally without its intervention, thereby causing damage to plaintiff, and the question was very properly submitted to the jury.

We have now noticed all the alleged errors relied upon in the brief of appellant's counsel.

The judgment will be affirmed, with costs.

The other Justices concurred.