[Filed December 20, 1886.]

## W. F. HAINES *v.* JAMES WELCH ET AL.

RIPARIAN RIGHTS—FLOATABLE STREAM.—If a fresh water stream is capable of serving an important public use as a channel of commerce. it should be considered public; if only a brook, although it may serve to float down saw-logs for a few days during a freshet, it is not therefore a public highway. Whether it is the one or the other depends upon its capacity, extent, and importance.

SAME—USE OF BANKS.—The right to float logs down a stream does not confer a right to run them upon the adjacent land, nor to cause the water to overflow the banks to the injury of the shore-owner; and it is immaterial whether an injury so occurring arises from the negligence of the party or otherwise.

SAME—LICENSE.—A general license from the shore-owner to float logs down a private stream would confer no greater right upon the licensee than he would have had without it, if the stream were navigable.

UNION COUNTY.  Defendants appeal.  Affirmed.

*J. W. Shelton* and *Wm. M. Ramsey*, for Appellants.

Any stream in this state is navigable, on whose waters logs or timbers can float to market, and they are public highways for that purpose.  It is not necessary that they be navigable the whole year for that purpose, to constitute them such. (*Felger* v. *Robinson*, 3 Or. 457; *Shaw* v. *Oswego Iron Co.*, 10 Or. 371.)  It is the settled law that streams of sufficient capacity to float logs to market are navigable.  (Cases *ante*, and *Whistler* v. *Wilkinson*, 22 Wis. 572; *Sellers* v. *Union Lumbering Co.*, 39 Wis. 525; *Olsen* v. *Merrill*, 42 Wis. 203; *Cohn* v. *Co.*, 47 Wis. 324; *Thunder Bay River Booming Co.* v.

---

*Speechly*, 31 Mich. 336.) If a stream is navigable, a person floating logs upon it has a right to a reasonable use of its banks therefor; and if it is necessary in such use to cause the banks to overflow, he is not liable for damages unless resulting from negligence. (*Weise* v. *Sunich*, 3 Or. 450; *Llurs* v. *Kaling*, 1 Jones, Law [N. C.] 299; *O'Fallon* v. *Mullenphy*, 4 Mo. 343–346; *Carter* v. *Thurston*, 42 Am. R. 584; *Thompson* v. *Androscoggin Co.*, 54 N. H. 545–558; *Thunder Bay River Booming Co.* v. *Speechly*, 31 Mich. 344.)

*R. Eakin*, for Respondent.

The navigation must be done upon the stream, and not on the banks. The navigator has the privilege of touching upon the banks in cases of necessity, but not to make a highway of the banks. (Angell, Water Courses, Sec. 539; Angell, Water Courses, Sec. 553 a; *Treat* v. *Lord*, 42 Maine, 552; *Brown* v. *Chadbourne*, 31 Maine, 9.) He must take the stream as he finds it. If made navigable by artificial means, it is not a public highway. (Angell, Water Courses, Sec. 539; *Morgan* v. *King*, 35 N. Y. 459.) Here the injury was the sole and direct result of the acts of the defendants, and they are therefore liable. (*Brockford* v. *Boom Co.*, 54 Mass. 107; *Treat* v. *Lord*, 42 Me. 553; *Hooper* v. *Hobson*, 57 Me. 276.) The rule of liability is not the same in streams only floatable, and those navigable for boats, &c. (Gould, Waters, Sec. 110.) Where the banks and bed are private property, the stream must be used with due regard to the rights of the owner. (*Hooper* v. *Hobson*, *supra*.) The liability does not depend on any question of negligence, where the infringment is upon plaintiff's exclusive possession. (See *Pixley* v. *Clark*, 35 N. Y. 523.)

THAYER, J.—This appeal is from a judgment recovered in favor of the respondent against the appellants, for the sum of fifty dollars damages and costs of action. The case was argued and submitted to this court at the October term, 1885, thereof, and should have been decided at once, and no doubt would have been, if it had not been overlooked and continued

over with a number of undecided cases, and escaped observation in consequence. The amount of the judgment is hardly sufficient to justify an appeal, and there is no important principle involved in the case requiring any such delay in the matter.

It appears that the respondent was in possession of, and claimed to own, a tract of one hundred and sixty acres of land in said Union County, across which flowed a creek called Anthony Creek; and the appellants, in June, 1884, put a quantity of saw-logs in the creek at a point above respondent's land, and floated them down to a point below it, where they had a mill for the purpose of manufacturing them into lumber. The respondent claimed that appellants had no right to use the creek in that way; that it was not navigable, and that portions of the logs lodged in the bed of the stream above and on his land; portions of them were carried out of the channel upon his premises, and that by the floating and lodging of the logs in the creek, the water thereof was dammed up, and caused to overflow its banks and flood the premises, and deposit sediment thereon; and whereby the respondent was injured in a great many ways not necessary here to enumerate. He specified the several items of damage in his complaint; alleged the extent in each particular, and they all aggregated $500. The appellants in their answer denied almost everything in the complaint, and set up affirmatively that the creek, during its annual high stage of water, which occurred in June and July of each year, was a navigable stream for the purpose of floating saw-logs from a point about ten miles above the land claimed by the respondent, to where it united with Powder River, a point below it; and that during such stage of high water it was useful and necessary for floating timber to market; that for the purpose of procuring saw-logs for their mill during the season of 1884, it became convenient and necessary to use said Anthony Creek as a public highway, during the high water season of that year, for floating them from the head of navigation on said stream through and past the lands claimed by the respondent, to a convenient point for hauling them to the mill, a distance of about fifteen miles; and to that

end the logs in question were put into the creek and floated down, or attempted to be floated down, through said land referred to. The appellants also claimed a special license from respondent to float said logs through his land.

The issues were framed on both sides with great particularity, but the principal point litigated in the case was whether the creek was a navigable stream or not, for the purposes for which the appellants sought to use it. Unless it were so navigable, the appellants had no more right to attempt to use it in the manner they did, than to attempt to appropriate any other part of respondent's farm. They could only use it in that case by obtaining the latter's consent to do so. The question, as it comes here, is a mixed one of law and fact. We could not say, as a matter of law, from what appears in the allegations and proofs, that the creek in question is a navigable stream; whether it is so or not depends upon its capacity, extent and importance. If it is capable of serving an important public use as a channel for commerce, it should be considered public; but if it is only a brook, although it might carry down saw logs for a few days during a freshet, it is not, therefore, a public highway. (Cooley, Const. Lim. 589.) And even if it were public, in the sense that it is useful to float products to market, it can only be used with due regard to the rights of the owner of its banks through which it flows. The appellants had no right to injure the respondent's premises, or intrude upon them. The right to float logs down the stream gave them no right to run them upon his land, nor to cause the water to overflow its banks to his injury. The bed of the stream, I suppose, belongs to the respondent; at least, we may so presume in view of the verdict of the jury in the case. The right, therefore, to float the logs, conceding that it existed, did not justify the acts alleged in the complaint to have been committed by the appellants. When any of the logs ran out of the channel upon the respondent's premises, or lodged in the channel, or caused the water to dam and flow over upon the respondent's land, and thereby do him injury, they were liable therefor. The latter's right to the enjoyment of his prem-

ises must, in any view, be held secure as against such consequences, whether they are occasioned by negligence of the party, or arise out of circumstances which he was unable at the particular time to control. If the appellants attempted to use the stream to float their logs, they were bound to keep them within the channel, and prevent them from lodging so as to injure the banks of the creek, or turn the water out of the channel. The right to use the stream for such purpose, conceding it to have been navigable for the purpose, must be restricted as indicated ; otherwise one person would be enabled to appropriate the property of another against the latter's consent and without compensation. The public cannot do that, and much less a private party. The act of the appellants may have been lawful, so long as it did not injure the respondent. A person may have a lawful right to excavate a canal, as was said by the court in *Hay* v. *Cohoes Co.*, 2 N. Y. 159, " but he cannot cast the dirt and stone upon the land of his neighbor, either by human agency or the force of gunpowder."

The theory of the appellants' counsel, that if the creek were navigable, they would only be liable in case of negligence in floating their logs, cannot be maintained. It being navigable would relieve them from a charge of trespass for floating their logs down it, but not for the acts above referred to. And, as I view the question, the judgment appealed from can be upheld under either circumstance. The amount of the verdict shows that the jury only allowed a small portion of the damages claimed ; and if they found that appellant's logs had injured the banks of the creek ; had turned the water on respondent's land in consequence of their lodging in the channel, and a portion of them had floated out of the channel on the land, whereby the respondent had been injured in the manner alleged ; as we must presume they did find, it was their duty to return a verdict for the respondent, even though they found that the creek was a navigable stream, as claimed in the answer.

Nor would it necessarily have changed the result if they had found that the respondent assented to appellants' floating the logs down the creek ; though they had found that the creek

was not, in fact, navigable. A general assent to float the logs down the creek would not have entitled the appellants to a verdict. It would not have been a license to the appellants to injure the respondent's premises. It would only have justified the acts to which it extended ; and if the appellants went beyond the license, they would have been trespassers from the point of departure. If a person enter another's premises under a license, and commit a trespass while in, the license will only be good as to the entry. Conceding that the consent had been given, it would still be a question for the jury to determine whether the appellants had not gone beyond the assent. The assent to float the logs down the creek would have conferred no greater right upon the appellants, if it were not navigable, than they had without it if the creek were navigable. Under this view, the instructions of the court were substantially correct, and those requested by appellants' counsel to be given, which were not given, were properly refused.

Under any view of the case, it seems to me, the main question to be decided was one of fact. The matter of defense set up in the answer, if true, was not decisive of the case. It would only have barred the action, if the creek had been a public highway, by the appellants' proving that they floated the logs down it within the channel, without interfering with the respondent's land, and the assent would only have barred it by the appellants showing that they kept within its terms ; which would have required them to prove that they pursued the same course exactly with reference to floating the logs within the channel. I do not think the verdict of the jury settled the question at all, as to whether the creek was navigable or not. In order to have accomplished that end, they should have been required to bring in a special verdict. Questions could, I think, have been so framed as to determine whether it was a public highway or mere private stream.

The judgment must be affirmed.

STRAHAN, J., did not sit in this case.