## NORTON *v.* ELWERT.

[41 Pac. 926.]

: 29   583
: 34   572

1. JURISDICTION OF EQUITY TO PREVENT IRREPARABLE INJURY.—Courts of equity have power to interfere by injunction to prevent an injury to land, even when the defendant is in possession and is claiming under an adverse and undetermined title, if the threatened injury will cause irreparable damage, by which is meant damage that cannot be compensated by any certain pecuniary standard: *Haines* v. *Hall*, 17 Or. 165, cited; *Mendenhall* v. *Harrisburg Water Company*, 27 Or. 38, approved. If the legal title to the land involved is in issue, however, and the equitable jurisdiction is challenged, the injunction will be continued only until the legal title is settled.*

2. JURISDICTION OF EQUITY—CODE, § 316.—The common law action of ejectment and trespass to try title and recover possession of land having been by section 316, Hill's Code of Oregon, united with the old action for the recovery of damages caused by injury to the estate while it was detained, there seems to be no good reason why a party out of possession, who can show such equitable circumstances as to clearly entitle him to relief, may not invoke the aid of a court of equity and be restored to his estate, in cases where the title is admitted or has been established at law.

3. REMEDY AT LAW—EQUITY—MANDATORY INJUNCTION.—Where a brick wall is built partly projecting on the land of another, the person intruded upon is entitled to the aid of equity to secure its removal, for, the wall being difficult to remove, there is no plain or adequate remedy at law, and a mandatory injunction should be issued requiring the offender to remove the structure from plaintiff's property.

From Multnomah: LOYAL B. STEARNS, Judge.

*On this point see also *Bishop* v. *Baisley*, 28 Or. 120.—REPORTER.

This is a suit by Sarah Norton against Mrs. J. B. Elwert for a mandatory injunction to compel the removal of a wall, and to recover damages resulting from its erection, involving the location and establishment of a disputed boundary line between the lands of the plaintiff and the defendant. The facts are that the plaintiff is the owner of the north forty-five feet, and the defendant of the south five feet of lot three, and all lot four, in block two hundred and eighteen, situated at the northwest corner of Yamhill and West Park Streets, in the City of Portland. In eighteen hundred and ninety-one the plaintiff built a two-story frame house, which cost about twelve thousand dollars, upon her part of the lot, and in the following year the defendant commenced to repair and construct three buildings upon her adjoining land, and upon the plaintiff's failure, after notice, to remove from her building certain projections which it was claimed extended over the boundary line, removed the water table, window sills and caps, cornice, rafters, sheathing and shingles from a large part of the south side thereof, with a view to the erection of a brick wall against it, along the supposed boundary line. This suit was commenced October tenth, eighteen hundred and ninety-two, by filing a complaint, wherein the plaintiff alleges that the defendant, on the preceding day, commenced the erection of a house, partly on her own ground, but that the north wall thereof was, for a distance of about fifty feet, being constructed from one and one half to two inches upon plaintiff's premises; that the wall

did not then extend the entire length of her house, but that the defendant threatened to so extend it as to exclude the light, and to remove the projections of her building which then remained, and that if the threat should be executed she would sustain irreparable injury; that she has no adequate remedy at law; and prays for a temporary restraining order which she asks might, at the hearing, be made mandatory, requiring the defendant to remove the wall from her premises and for five thousand dollars damages. The defendant having denied the material allegations of the complaint, the cause was referred and the evidence taken, from which the referee found that the wall at the northeast corner of defendants building extends upon the plaintiff's premises, at and below the surface of the ground, one half inch, and at a point six feet above the surface, one and one half inches, which extension continues upward to the top and westward about sixty feet to a point from which it begins to recede, and at the northwest corner is one half inch south of the boundary, and, as conclusions of law, that plaintiff was entitled to a decree for one thousand seven hundred and fifty dollars, and a mandatory injunction compelling the defendant to remove the wall; and the court having approved these findings, rendered a decree in accordance therewith, from which the defendant appeals.          Affirmed.

For appellant there was a brief signed by *Messrs. Edward Mendenhall, Watson, Beekman and Watson,* and *Elbert J. Mendenhall,* with an oral argument by *Messrs. Edward B. Watson* and *Edward Mendenhall.*

For respondent there was a brief signed by *Messrs. Whalley, Strahan and Pipes*, with an oral argument by *Mr. John W. Whalley*.

Opinion by Mr. Justice Moore.

1. It is contended that, the defendant having erected the wall upon and being in possession of the *locus in quo*, a court of equity should not grant a mandatory injunction to compel the removal of the structure until the legal title to the premises occupied by it shall have been determined in an action at law, and that to grant the relief prayed for would be to substitute a suit in equity for an action in ejectment, thus depriving her of the constitutional right to a trial by jury. It is a familiar principle, which has existed since the origin of a court of chancery, that equity will not interpose its jurisdiction to try an issue where the party has a plain, adequate, and complete remedy at law; and, since the legal title to and possession of land can ordinarily be tried and recovered in a action at law, a court of equity will not, in the absence of fraud, mistake, or some other intervening equity, try the legal title to or, unless as an auxiliary relief, restore the possession of land, except in cases of disputed boundaries, partition and the assignment of dower, and in these only where the issue and relief are incidents to the principal objects of the suit: Pomeroy's Equity Jurisprudence, § 177. While courts of equity originally declined to restrain waste or trespass, they now frequently interpose, and by temporary injunction prevent an injury to land, even

where the right thereto is in dispute, and the defendant is in possession claiming by an adverse title, if the threatened injury will be productive of irreparable damage (2 Waterman on Trespass, § 1128; *Bracken* v. *Preston*, 1 Pinney, 584 (44 Am. Dec. 412); *Long* v. *Kasebeer*, 28 Kan. 226; *Webster* v. *Cooke*, 23 Kan. 637); and an injury is irreparable if of such a nature that it cannot be adequately compensated in damages, or cannot be measured by any certain pecuniary standard: *Wilson* v. *City of Mineral Point*, 39 Wis. 160. The right of a court of equity, in cases of irreparable injury, to interpose, and by temporary injunction preserve the *status quo*, and restrain a trespass upon land, the right to which is in dispute, until the title can be determined in an action at law, is no longer seriously controverted (*Clayton* v. *Shoemaker*, 67 Md. 216 (9 Atl. 635); *Wilson* v. *Rockwell*, 29 Fed. 674; *Erhardt* v. *Boaro*, 113 U. S. 537 (5 Sup. Ct. 565); 1 Spelling on Extraordinary Relief, § 367); and the refusal of a court to award a preliminary injunction in such cases would, in effect, be a denial of justice: *Wilson* v. *City of Mineral Point*, 39 Wis. 160. The right to grant a preliminary injunction under such circumstances being conceded, the rule, nevertheless, seems universal that where the legal title to the *locus in quo* is put in issue, and the jurisdiction of a court of equity is challenged, an injunction to restrain a trespass, though temporarily granted, will not be made perpetual until the legal title to the disputed premises has been tried in an action at law (1 High on Injunction, § 701; 10 Am. and Eng. Ency. of

Law, 799); so that, before an injunction will be made perpetual the following conditions must co-exist,—*first*, the plaintiff's title must be admitted or established at law; and, *second*, the injury complained of must be irreparable in its nature, or productive of a multiplicity of actions against different parties asserting the same right: 1 High on Injunction, § 701; 2 Beach on Injunction, § 1142; 1 Spelling on Extraordinary Relief, § 368; *Hatcher* v. *Hampton*, 7 Ga. 50; *Thorn* v. *Sweeney*, 12 Nev. 251; *Poyer* v. *Village of Des Plaines*, 123 Ill. 111 (5 Am. St. Rep. 494, 13 N. E. 819).

In *Echelkamp* v. *Schrader*, 45 Mo. 505, the plaintiff and defendant were owners of adjoining tracts of land, upon which was erected a double house containing a partition which was supposed to be on the line between their several estates, but, by a careful survey, it was discovered that the boundary extended across the plaintiff's section of the house about three feet from the partition. The defendant, desiring to remove the portion of the house upon his land, commenced to saw through the plaintiff's part on the line of the new survey, to prevent which he was enjoined at the suit of the plaintiff, who had for about seventeen years occupied to the partition the section so claimed by him. The preliminary injunction which had been issued having been made perpetual, the defendant appealed, and the court, in reversing the decree, said: " It is usual in cases like this, where the title comes in controversy, to grant a temporary injunction to await the event of an action at law to be prose-

cuted by the plaintiff. But here the plaintiff is in actual possession, and has been for many years, and is therefore not in a position, nor has he any occasion to sue. The defendant is the proper party to bring an action, and test the rights of the respective parties at law. If he neglects to do this in a reasonable time, he will have no just grounds of complaint if the injunction is made perpetual against him in consequence of his own negligence." In the case last cited there was no conflict in relation to the boundary, but the plaintiff having been in possession for about seventeen years of that part of the house which extended to the partition, the legal title thereto was in doubt, and hence it was proper to deny the perpetual injunction until the legal right could be tried in an action at law. In the case of *Haines* v. *Hall,* 17 Or. 165, (3 L. R. A. 609, 20 Pac. 831,) the defendant attempted to drive logs in a stream flowing through the plaintiff's premises, but the quantity of water therein being insufficient for that purpose, the logs cut away the plaintiff's land, thereby producing irreparable injury, to prevent a recurrence of which the plaintiff commenced a suit to restrain the trespass and for damages. The issue made by the pleadings was the navigability of the stream, and it appearing that the plaintiff, in an action against another party who asserted the same right, had recovered damages resulting from a similar trespass, (*Haines* v. *Welch,* 14 Or. 319, 12 Pac. 502,) it was held by the majority of the court that equity would grant the relief prayed for, but Strahan, J., in a dissenting opin-

ion, held that in the case of *Haines* v. *Welch*, the navigability of the stream in question was not adjudicated, and since that was not the issue in the case of *Haines* v. *Hall* then pending, equity should not award a perpetual injunction until the legal right had been tried in an action at law. The case of *Mendenhall* v. *Harrisburg Water Company*, 27 Or. 38, (39 Pac. 399,) was a suit to enjoin the defendant from trespassing upon the plaintiff's premises, and involved a question of the width and boundaries of its right of way across the plaintiff's land. The lower court, after the evidence was taken subject to objection, having denied a motion for leave to amend the answer, so as to allege an adverse user, and no question of title being in issue, and the defendant having threatened the destruction of the plaintiff's estate in the manner in which it was enjoyed, held that equity would assume jurisdiction and grant final relief. To entitle a party to relief by permanent injunction to prevent a trespass upon land, he must ordinarily allege and prove, in addition to the establishment or admission of his legal title, that he is in the actual possession as well as entitled to the possession of the *locus in quo:* 2 Beach on Injunctions, § 1142; 1 Spelling on Extraordinary Relief, § 364, and cases cited.

2. At the common law the owner of an estate in land from which he had been ousted could not maintain an action to recover mesne profits, for the reason the tenant had need of them to enable him

to perform the feudal services: 3 Blackstone's Commentaries, *187. In an action of ejectment the damages recoverable were nominal, but after the possession of the land had been restored, the plaintiff, in a subsequent action of trespass, might recover the mesne profits from the person who had unlawfully received them (3 Blackstone's Commentaries, *205); and to maintain an action of trespass it was necessary for the plaintiff to allege and prove that he had an interest in the soil, and was in actual possession by entry, before he could recover damages; but in the case of disseisin he might maintain an action against the disseisor for the injury done by the disseisin itself, but he could not recover any damages for an injury done after the disseisin until he had gained possession by reëntry, and then he might recover the immediate damage done: 3 Blackstone's Commentaries, *210. In *Mendenhall* v. *Harrisburg Water Company*, 27 Or. 38, (39 Pac. 399,) the plaintiff being the owner of the fee, was constructively in possession of the *locus in quo*, subject to the defendant's right to occupy the easement, and, the possession of each being lawful, the question of plaintiff's ouster was not in issue. So, too, in *Haines* v. *Hall*, 17 Or. 165, (2 L. R. A. 609, 20 Pac. 831,) the defendant's possession of the stream was founded upon its assumed navigability, and in no way interfered with the plaintiff's ownership of the fee and right of possession, which was subject only to the paramount easement, and hence the exclusive possession of the defendant was not there in issue. The common law action of eject-

ment and trespass to try the title and to recover the possession of land, and for the recovery of mesne profits as well as damages resulting from injuries to the estate, have been united by the statutory action at law for the recovery of possession of real property with damages for withholding the same: 1 Hill's Code, § 316; *Goldsmith* v. *Smith*, 10 Sawy. 294 (21 Fed. 611); *Wythe* v. *Myers*, 3 Sawy. 595 (Fed. Cas. No. 18,119). These common law actions having been thus united, we can perceive no just reason, in cases where the title is admitted or has been established at law, why a party out of possession, when he shows such equitable circumstances as to clearly entitle him to relief, may not invoke the aid of a court of equity, and be restored to his estate; and, though it must be admitted that equity will generally refuse to permanently enjoin a trespass where the defendant is in actual possession, but will leave the parties to their legal remedies, it is nevertheless a general principle that the remedy which warrants a refusal of relief by injunction must be plain and adequate: 1 Spelling on Extraordinary Relief, § 370.

3. Applying these rules to the case made by the record, the inquiry is elicited whether, admitting the allegations of the complaint to be true, the plaintiff will suffer irreparable injury, and, if so, has she a plain and adequate remedy at law? If, in an action of ejectment, the wall cannot be removed, the injury resulting from its erection could not be compensated by any measure of damages,

however great the sum which a jury might award, for it would, in effect, amount to a condemnation of the plaintiff's property, and an appropriation of it to the defendant's private use, and to concede that ever so small a strip of plaintiff's premises could be thus taken would be to admit a rule of law which must necessarily be almost limitless in its application. In an action at law it would be difficult for the plaintiff to regain possession of that portion of her land occupied by the wall, for the sheriff, when called upon, might well hesitate to execute a writ commanding a restoration of the premises, since he must cut the wall to the division line and in doing so he might take more than the "merchant's pound of flesh," and thus render himself liable in damages to the defendant: *Baron* v. *Korn*, 127 N. Y. 224 (27 N. E. 804). The removal of the wall being difficult, the plaintiff has no plain remedy at law, and hence she must suffer irreparable injury, and for the recovery of the damages resulting therefrom she could have no adequate remedy at law. In all such cases equity will, upon the theory that wherever there is a right there is also a remedy, interpose and grant complete relief, and for that purpose will, where there has been no unreasonable delay in seeking the relief, award a mandatory injunction and place the obligation of removing the structure upon the party who caused it to be erected: *Murdock's Case*, 20 Am. Dec. 381; *Starkie* v. *Richmond*, 155 Mass. 188 (29 N. E. 770). In the case at bar, the boundary between the two estates, as evidenced by the deeds of the parties, being coincident, and there being no

29 OR.—40.

claim of title by adverse occupancy, there can be no dispute concerning the legal title. It is true there is a contention about the boundary, the plaintiff claiming it is located on one line and the defendant insisting it is on another, between which there is a narrow strip of land, but when the boundary is established the controversy is adjudicated. The title to this strip is only an incident to the principal cause of suit, and hence not necessarily involved in the issue. While it is admitted that the defendant is in the actual possession of the disputed strip, her right of possession depends upon the legal title thereto; and, there being no issue upon that question, it follows that there is no issue upon the question of the right of possession. If the plaintiff had brought an action in ejectment all she could have obtained would have been a judgment that she was the owner and entitled to the possession, both which conclusions are conceded to be dependent upon the location of the disputed boundary. A court of law, it must be admitted, has exclusive jurisdiction to try a question of disputed boundary, unless there are connected with the case some peculiar circumstances which render the relief and the mode of obtaining it in that court less efficient than in a court of equity, and in all such cases the concurrent jurisdiction of equity attaches: 1 Pomeroy's Equity Jurisprudence, § 180. It is evident that the relief at law, if a judgment were there rendered determining the legal right in plaintiff's favor, would be difficult of enforcement, and certainly less efficient than in equity, and therefore

the concurrent jurisdiction of the latter must necessarily attach. Nor is this conclusion in conflict with the rule announced in *King* v. *Brigham*, 23 Or. 262, (18 L. R. A. 361, 31 Pac. 601,) as tending to deprive a party of his constitutional right of a trial by jury; for here the defendant, by constructing the wall,— conceding it to be on plaintiff's premises,— cannot take advantage of her own wrong, and thus insist upon a strict legal right, or deprive a court of equity of its right to assume concurrent jurisdiction. Neither can the defendant's possession of the premises occupied by the wall deprive equity of its jurisdiction, for it is necessary to the exercise of that right that the plaintiff should show that some portion of her land in respect to which the establishment of the boundary is sought is in possession of the defendant: 3 Pomeroy's Equity Jurisprudence, § 1385.

The record discloses that in order to establish the boundary in dispute, the parties by their respective attorneys, entered into the following written agreement: "It is hereby stipulated that the monument at the intersection of the center lines of Front and Washington Streets, and the base line run therefrom, as referred to and established by ordinance one hundred and seventy-seven of the City of Portland, Oregon, are to be taken and recognized by the parties hereto as the true and correct monument and base line for all surveys in the said city, and particularly for the survey of the boundary line between plaintiff's and defendant's premises in dispute in this cause, and that said

monument is the correct initial point from which said survey shall start." This ordinance prescribes the size of blocks, and the width of streets, and provides for the establishment of a stone monument at the intersection of Front and Yamhill Streets, from which point all surveys of streets in that part of the city in which the property in question is situated shall be extended. It also appears from a copy of a map of the city, offered in evidence, that the distance on the center line of Front Street from the initial point south to the intersection of the center line of Yamhill Street is seven hundred and eighty feet; and from this point west on the center line of Yamhill Street to the west side of West Park Street is two thousand three hundred and fifty feet. Measuring north from this point thirty feet, one half the width of Yamhill Street, locates the southeast corner, and eighty-five feet the northeast corner of the defendant's premises; and by extending a line from the point last named parallel with Yamhill Street establishes the boundary in dispute. The evidence shows that careful surveys have been made and the lines run from the initial point, as above indicated, resulting in the establishment of the boundary as found by the court and referee. The defendant having changed her attorneys since the trial of the cause in the court below, those now representing her insisted upon the argument that the stipulation established a fact which was contradicted by other evidence offered by the defendant both before and after the stipulation was executed. This evidence showed that a stone monument, containing a point

intended to mark the intersection of the center lines of Front and Yamhill Streets, had been set at an early day by one C. W. Burrage at a point seven hundred and seventy-nine and ninety-two hundredths feet south of the initial point, and that E. W. Pagett, as city surveyor, had indicated on this monument another point of intersection seven hundred and eighty and six hundredths feet from said point: so that if a right angle were turned at the Burrage point upon the base on Front Street, the boundary in question would be forty-six hundredths of an inch north of the defendant's wall, but if turned upon the same base at the Pagett point the line would fall one and twenty-two hundredths inches south of the north line of the wall, or seventy-two hundredths inches further to the south than when determined ·by an angle turned at a point seven hundred and eighty feet from the initial point. Section 4 of the ordinance referred to provides that "The surveyor of the City of Portland shall erect and establish additional stone monuments, not exceeding fifty in number, at such places as the city council shall direct; *provided*, that all such additional monuments shall be located at the points of intersection of the streets running parallel with said base line and those running at right angles therewith, which points of intersection shall be ascertained and determined by surveys made from the said stone monuments at the intersection of Front and Washington Streets, when established pursuant to section 1 of this ordinance; such additional monuments, when so erected and established

shall be the places of beginning for subsequent surveys of streets, and such surveys made therefrom as places of beginning shall be valid, the same as if made from the stone monument provided for in section 1 of this ordinance." No evidence was introduced to show that C. W. Burrage, when he placed the monument at Front and Yamhill Streets was the city surveyor of Portland, or that he set it as required by the provisions of section 4 of ordinance number one hundred and seventy-seven. The conclusion reached upon the location of the boundary in dispute is predicated upon the survey extended from the initial point, and under the evidence before us, is, in our judgment, decisive of the question, irrespective of the stipulation.

Upon the question of damages it is impossible to determine the amount that should, in justice, be awarded. The evidence introduced by the plaintiff tended to show that her building had been damaged in the sum of four thousand dollars, and the defendant offered no evidence which tended to show that the plaintiff's building could be restored to its former condition for a less sum, and, the court having awarded one thousand seven hundred and fifty dollars, we cannot say that it is excessive in view of the record before us. It follows that the decree must be affirmed, and it is so ordered.

Affirmed.