[Alabama Lumber Co. *et al.* v. Keel.]

# Alabama Lumber Co. *et al. v.* Keel.

*Action by Riparian Proprietor to recover Damages for
Injury to Land.*

1. *Action to recover damages from floating timbers in navigable
stream; when defendants liable.*—In an action by a riparian
land owner, to recover damages to his property alleged to
have resulted from the negligence of defendants in floating
timber in a navigable stream, down to a boom which was
constructed across the stream for the purpose of handling the
timber so floated, where it is shown that the defendants float-
ed such masses of timber into the boom as to create a jam in
and along the stream, covering the surface of the stream and
rising above and extending below the surface, and as a result
the water was raised and forced out of its natural channel,
and made to run across the plaintiff's lands, carrying away
his fences and washing away the soil of his land, the defend-
ant is liable, even though he had the right to construct and
use the cross-boom and though it was properly constructed
and he exercised all care and diligence to prevent the forma-
tion of the jam and to relieve the jam after it was formed; the
wrong and negligence consisting in floating the logs and tim-
bers down stream to the boom in such numbers and masses
as to make the jam and cause the damages complained of.

2. *Same; same; charge to the jury.*—In an action by a riparian
land owner to recover damages resulting to his land by reas-
on of an overflow, alleged to have been caused by the de-
fendants floating too great a quantity of timber down the
stream running by his property, which wrong resulted in a
jam at a cross-boom just below plaintiff's property, it is for
the jury to say from a consideration of all the evidence in the
case, whether the amount of timber shown to have been float-
ed by the defendant in said stream was an unreasonable use
of the stream; and a charge which takes this consideration
from the jury is properly refused.

3. *Same; same; same.*—In such a case, although it is shown that
one of the causes which led to the injuries complained of was
the unusual floods, yet, if the jury should find that if it had
not been for the wrongful use by the defendants of the stream
in floating the timbers the plaintiff would not have been dam-
aged, then the plaintiff would be entitled to recover. There-
fore, a charge requested by the defendants is properly refused
which instructs the jury that "if the plaintiff's land was
damaged by extraordinary floods, then the jury will find for

the defendants."

4. *Same; same; admissibility of evidence.*—In an action by a riparian land owner, to recover damages resulting to his lands by reason of an overflow, alleged to have been caused by the defendants floating too great a quantity of timber down the stream running by his property, which wrong resulted in a jam at a cross-boom just below plaintiff's property, the fact as to whether or not other tracts of land belonging to different people and located on the same stream above and below the boom where the jam was caused, were or were not washed, is irrelevant and immaterial; and evidence thereof inadmissible.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. J. A. BILBRO.

This action was brought by the appellee, Moses B. Keel, a riparian proprietor, against the appellants to recover damages for injuries to his lands, alleged to have resulted from the negligence of the defendants in floating timbers in Paint Rock river.

The complaint as amended charged that the defendants, by placing large quantities of timber into and along the banks of Paint Rock river, negligently and wrongfully taxed the capacity of Paint Rock river to float the timbers, and upon such timbers being caught by the boom which was stretched across the river below the plaintiff's property, there was a jam or drift caused, which forced the water out of it natural channel and caused it to flow over the plaintiff's lands, washing the soil from the surface thereof, destroying the fences of the plaintiff and causing other serious damage.

The cause was tried upon the plea of the general issue, and upon special pleas which set up that the defendants were using the Paint Rock river in a proper and legal way for the purpose of floating timbers at the time mentioned in the complaint.

It was admitted on the trial that Paint Rock river was a navigable stream for the purpose of floating timbers; it was shown that said river was a long, narrow stream 125 to 180 feet in width at the ordinary stage of the water; that the plaintiff owned a plantation along the banks of said stream; that a short distance below the

plaintiff's plantation there was constructed what was known as a cross-boom, which was formed by pieces of hewn timber being coupled together by chains and tied clear across the stream for the purpose of catching the logs and other timbers as they floated down the stream. It was shown that the defendants were engaged in the lumber business at Paint Rock station, a short distance below the cross-boom and that their method of getting timber for their mills was by floating logs down Paint Rock river.

The cross-boom just below the plaintiff's property had been constructed and was in use for a number of years. It was shown that the defendants would cut the timber from the forests adjoining the stream in the summer and fall of the year and place the timber so cut upon the edges of the stream and near thereto, and that in the winter and spring during the freshets, the stream would rise and enable the timbers so cut and placed near the banks to be floated down the stream. That the cross-boom would catch the timber and that the defendant's employes would, by the opening of such boom, let the timbers pass through and be floated down to the mills of the defendants where they would be caught in the mill or pocket boom, and there taken from the water and sawed into lumber.

The evidence for the plaintiff tended to show that during the winters of 1898 and 1899, the defendants placed such a great quantity of timbers along Paint Rock river that when the freshets came and the tide rose, there was caused a jam of timbers extending from the cross-boom on up to and beyond the plaintiff's lands; that this jam continued for a long time, the freshets being unprecedented during the winters referred to; that as the result of the jam, the water was forced out of its natural channel and created a current which carried some of the timbers floated down the stream from the plaintiff's property; that during this time the water was over the plaintiff's land from two to ten feet in depth; and that as the result the plaintiff's soil was cut away from his lands, his fences were washed away and his property otherwise seriously injured.

The evidence for the defendants tended to show that the cross-boom was constructed so that it would float upon the water, and that the boom would rise and fall with the stream; and that as a consequence the existence of the boom would not increase the water, and the quantity of timber in the boom would not materially affect the level of the water in the drift. It was further shown that in times of high water, such as was shown by the plaintiff's evidence, when the lands were submerged and washed, it was impossible to open the boom and let the logs through on down to the defendants' mills; that during the time complained of, the defendants, through their agents and employes, did all in their power to prevent the jam from being formed, but that on account of the unusual freshets, they were unable to prevent it. It was further shown by the evidence for the defendants that the lands of the plaintiff were very low, and that he had caused a great deal of timber bordering on Paint Rock river to be cut from the land, which made it very much more likely to be overflowed and subject to being washed thereby.

Upon the introduction of one Wiley Hill as a witness for the defendants, and after he testified that he owned and operated a farm about a mile and a half from the cross-boom, and that his banks were about as high as the plaintiff's, the defendants asked the witness the following question: "State whether your lands were washed, and if so, the character and extent of the wash" during the time referred to in the plaintiff's evidence. The plaintiff objected to this question, on the ground that it called for immaterial and irrelevant testimony. The court sustained the objection and the defendants duly excepted.

The defendants requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe the evidence, they will find for the defendants." (2.) "If the defendants exercised reasonable care to prevent the formation of jams, or to remove them when formed, then they were not guilty of obstructing the stream so as to render them liable to

damages in this suit." (3.) "If the plaintiff's lands were damaged by extraordinary floods, then the jury will find for the defendants." (4.) "If the defendants exercised reasonable care to prevent or remove jams and to remove the timber from the boom, then the plaintiff cannot recover in this action." (5.) "If the plaintiff was injured by reason of an unusual flood, which defendants could not reasonably have anticipated, and by the exercise of ordinary care prevented, the plaintiff can not recover." (6.) "Under the evidence in this case the court charges the jury that it was not negligence or an unreasonable use of the stream to catch the logs in a boom." (7.) "Under the evidence, the court charges the jury that the amount of timber floated and boomed in this case was not an unreasonable use of the stream." (8.) "If it was reasonably necessary to catch logs against a boom and thus form a drift during times of high water, the formation of a drift against the booms would not of itself be wrongful, or give plaintiff any right of action." (9.) "The law does not limit the amount of timber that may be floated down the stream if reasonable care was used in floating and booming the timber."

There were verdict and judgment for the plaintiff, assessing his damages at $400. The defendants appeal, and assign as error the several rulings of the court to which exceptions were reserved.

MARTIN & BOULDIN, for appellant, cited, *Harold v. Jones,* 86 Ala. 274; *Hopkins v. Butte,* 40 Am. St. Rep. 438; *Morrison Bros. v. Coleman,* 87 Ala. 655; *Commissioners, etc. v. Coweta Lime Works,* 47 Am. St. Rep. 829; *Davis v. Winslow,* 81 Am. Dec. 573, note on p. 582; *Carter v. Thurston,* 42 Am. Rep. 584; Gould on Waters, (2d ed), 107, 110; Black's Pomeroy on Water Rights, 225, 227, 228; *Field et al v. Apple River Log Driving Co.,* 31 N. W. 17; *Swanson v. Miss. Boom Co.,* 44 N. W. 986; 6 Am. & Eng. Encyc. of Law, (1st ed.), 559; 16 Am. & Eng. Encyc. of Law, (1st ed.), 259, 260.

[Alabama Lumber Co. *et al.* v. Keel.]

J. E. BROWN, *contra,* cited, *Bayzer & Shepherd v. McMillan Mill Co.,* 105 Ala. 397; *Powell v. Jones,* 72 Ala. 397.

McCLELLAN, C. J.—If the facts are as deposed to by the plaintiff and his witnesses—if the defendant floated such masses of timber into the boom as to create a jam in the boom and up the river along plaintiff's land, covering the surface of the stream and rising above the surface for several feet and of course in consequence extending much below the surface—even, it is inferable, to the bed of the stream in places, and thereby the water was raised and thrown out upon plaintiff's land to his damage, or, whether raised or not higher than it would have been in the absence of the jam, if the current by reason of the timbers was diverted from the channel and made to run across plaintiff's land, carrying away his fences and cutting away the soil of his land, the defendants are liable to damages to him, though they had a right to construct and use the cross-boom, though it was properly constructed, and though they used all care and diligence to prevent the formation of the jam as the timbers came into the boom, and to relieve the jam after it had been formed. On this state of case their wrong and negligence consists in floating logs and timbers down the river to the boom in such numbers and masses as that the jam and consequent damming up of the stream so as to raise the water and throw it upon plaintiff's land or to divert its current across the same was inevitable; and their unavailing efforts to prevent the jam and to relieve it, serve but to accentuate or make clearer their fault in having thus overtaxed the capacity of the stream and their own resources.—4 Am. & Eng. Encyc. of Law, pp. 711 *et seq.;* Gould on Waters, § 103; *Grand Rapids Booming Co. v. Jarvis,* 30 Mich. 308; *Cotton v. Mississippi & Rum River Boom Co.,* 19 Minn. 497; *White River Log & Booming Co. v. Nelson,* 45 Mich. 578; *Anderson v. Thunder Bay River Boom Co.,* 61 Mich. 489; *Haines v. Welch,* 14 Ore. 319; *Hackstack v. Kershena Im. Co.,* 66 Wis. 439; *McKenzie v. Boom Co.,* 29 Minn. 288; *Weaver v. Boom Co.,* 28 Minn. 534. This is the view taken by the trial court

as indicated in its rulings upon charges requested by the defendants. Of the instructions refused to them, all but three would have required a verdict for defendants though the jury might be satisfied that they were at fault in unreasonably overtaxing the stream in the floating of timbers and that such fault caused the injuries complained of. Of the rest, charge 1 was the general affirmative charge and was, of course, properly refused. The injuries to plaintiff might in a sense have been caused by the extraordinary flood stage of the river, and yet the wrong of defendants might have so coalesced with that cause as to render them liable. Charge 3 was therefore misleading and properly refused. Charge 6 refused to defendants is covered by the first given charge at their instance. It was for the jury to say whether "the amount of timber floated and boomed in this case was an unreasonable use of the stream." Charge 7 would have taken this issue from them.

The court was right in declining to go into inquiries as to whether various other tracts of land belonging to divers persons, and located some above the jam and others below the boom, but none having the same relation to either as the land of the plaintiff, "were washed and, if so, the character and extent of the wash." This line of inquiry would have opened up an unlimited number of issues, collateral to the issue in this case, and the solution of which could have shed only a very dim and uncertain and confusing ray of light on the question before the jury.

Affirmed.