BURTON v. REX OIL & GAS COMPANY.

1. SALES—RETENTION OF TITLE—PASSAGE OF TITLE—CASING FOR OIL WELL.

Where casing for an oil well was supplied by defendant under an agreement retaining title in defendant until the well was completed either as a producer or as a dry hole, title passed to purchaser either when well was completed as a "producer," even though in a relatively small quantity, or when the parties later made a new agreement without condition attached as to passage of title, both of which events took place before defendant retook some 1,438 feet of the 1,542 feet of pipe originally delivered.

2. INJUNCTION—ADEQUACY OF REMEDY AT LAW—DAMAGES—AVAILABILITY OF ARTICLE ON OPEN MARKET.

In suit for mandatory injunction to deliver a quantity of oil-well casing to plaintiff that defendant had taken from plaintiff, an action for damages would not provide an adequate remedy where such casing was not available on the open market and damages could not be fixed with a reasonable degree of certainty.

3. SAME—ADEQUACY OF REMEDY AT LAW—REPLEVIN—COMMINGLED OIL-WELL CASING.

In suit for mandatory injunction to require defendant to deliver a quantity of oil-well casing to plaintiff that defendant had taken from plaintiff, the remedy of replevin would not provide an adequate remedy where plaintiff did not know to which of defendant's two places of business the casing had been taken and was unable to distinguish it from defendant's casing with which it had been commingled.

REFERENCES FOR POINTS IN HEADNOTES
[1] 47 Am. Jur., Sales, § 870.
[2, 3] 28 Am. Jur., Injunctions, §§ 17, 20, 38, 39.
[4] 28 Am. Jur., Injunctions, § 303.

4. Same—Damages—Evidence.

> Where plaintiff testified that he suffered damages of at least $1,000 in connection with the moving of an oil-well drilling rig, necessitated by defendant's unlawful taking of plaintiff's casing, an award of $500 special damages to plaintiff was well within the range of proofs in suit for mandatory injunction to return such casing.

Appeal form Allegan; Smith (Raymond L.), J. Submitted January 6, 1949. (Docket No. 30, Calendar No. 44,241.) Decided April 11, 1949. Rehearing denied May 18, 1949.

Bill by James M. Burton against Rex Oil & Gas Company, a Michigan corporation, and another for a mandatory injunction requiring defendant to deliver casing to him. Decree for plaintiff. Defendant Rex Oil & Gas Company appeals. Affirmed.

*Leo W. Hoffman,* for plaintiff.

*Harold M. Street,* for defendant.

Dethmers, J. Plaintiff's bill of complaint prays that he be decreed to be the owner of 1,500 feet of casing and for a mandatory injunction requiring defendants to deliver the casing to him and for an accounting of certain oil receipts. From decree for plaintiff defendant Rex Oil & Gas Company, hereinafter called defendant, appeals.

One Hubert Smith owned oil and gas leases covering acreage upon which he had drilled an oil well. In May of 1946, he granted defendant an option to purchase all oil which might be produced by the well or from the acreage. In turn, the defendant entered into a written agreement to furnish Smith with casing for the purpose of completing and testing said well. The agreement read in part as follows:

"We agree to furnish you with sufficient 5-3/16″ casing of appoximately 1,500 feet for the purpose of testing the well. Said pipe is to remain our property until the well is completed either as a producer or as a dry hole. If said well results in a producer, you agree to pay us at the ceiling price for the 1,500 feet of 5-3/16″ casing from the proceeds paid out of the oil runs within three months (*not to exceed 1/4 of oil runs*). If said well is completed as a dry hole, all 5-3/16″ casing shall remain our property and you agree to pull such casing as is possible with the drilling rig and to place such pipe on the pipe racks for our disposal. In the event the drilling rig cannot pull the pipe, we are to have the right to draw such pipe from the hole and remove it from the location."

Under this agreement defendant delivered 1,542 feet of casing, at a ceiling price of $695.44, to Smith. He thereafter completed the well, which produced 693.37 barrels of oil of a value of $1,041.32 during the months of June, July, August, and September of 1946. Operations were then suspended for about a year after development of a salt water disposal problem. At defendant's direction, oil runs from the well were delivered to defendant Naph-Sol Refining Company, hereinafter referred to as Naph-Sol. Through error, no part of the proceeds of the oil runs for June, July and August were turned over by Naph-Sol to defendant. In November of 1946, while Naph-Sol still retained $206.99, representing the September run, a new agreement was made between defendant and Smith whereunder defendant received from Naph-Sol the $206.99 on the purchase price of the casing and agreed to accept in payment of the balance due all proceeds from future runs from the well in excess of $50 per month until paid in full.

· In October of 1947, when there was still a balance of $488.45 due defendant on the casing, Smith sold

the oil leases, well and equipment, including the casing, to plaintiff, who proceeded to operate the well, producing oil in October and December of 1947, of a total value of $353.02, which plaintiff at that time instructed Naph-Sol to pay to defendant on the casing account, but which Naph-Sol still retained at time of trial. In January of 1948, plaintiff plugged the well and pulled the casing, intending to use it at another location where he was drilling a well. In his absence defendant took possession of 1,438 feet of the casing and commingled it with its own in its yards at Grandville, Michigan. Plaintiff thereupon tendered to defendant the balance due on the casing and demanded its return. Defendant refused to return the casing or disclose its whereabouts. Plaintiff was unable to obtain casing elsewhere, it being unavailable on the market. In consequence, he was unable to complete the well which he was at that time drilling and therefore moved his rig for use elsewhere, necessitating its return for completion of the uncompleted well at a later date. Plaintiff testified that the additional moving of the rig to and from said location had cost him at least $1,000 and that it had been necessitated by his lack of casing when needed.

The trial court entered a decree requiring defendant to deliver 1,438 feet of casing to plaintiff, requiring Naph-Sol to turn over the $353.02 held by it to defendant, and requiring defendant to pay plaintiff $500 as special damages suffered by him by reason of defendant's unlawful taking of the casing, less the $135.43 representing the balance still due from plaintiff to defendant for the casing after crediting on the account the $353.02 held by Naph-Sol.

The first question in dispute is whether title to the casing ever passed from defendant to Smith. Under the May, 1946 agreement, title was to pass when and if the well should be completed as a "pro-

ducer." Plaintiff insists that it was completed as a producer because the well has produced some oil. Defendant contends that, as used in the oil industry, the term "producer" means an oil well capable of paying off the cost of drilling, equipping and operating the well and yielding, in addition, a profit; and, further, that the agreement discloses that the parties used the term "producer" to signify a well at least capable of paying the $695.44 cost of the casing in 3 months by the application thereto of one-fourth of the well's oil run.

It will be noted that the agreement did not provide for retention of title by defendant until payment was completed out of oil runs but only until the well was completed as a producer. As of the date of completion of the well, either it was a producer, in which event title passed and Smith became obligated to pay defendant, or the well was not a producer, in which event the casing still belonged to defendant, defendant was entitled to take it, and Smith was obligated to pay nothing. It is significant, therefore, that upon the well's completion defendant did not demand nor, for a year and a half thereafter, take the casing, but, on the contrary, sent to Smith an instrument, termed a "bill" by plaintiff and an "invoice" by defendant, for $695.44 for the casing. In response thereto a letter was written for Smith to defendant proposing the new agreement of November, 1946, which defendant approved and under which it accepted the $206.99 and agreed to accept payment of the balance due out of runs from the well exceeding $50 per month. In so doing the parties either were treating title as having passed at completion of the well or they were effecting a new sale to which no condition attached. Whether title passed at completion of the well in accord with the original agreement or later by virtue of the new agreement is of no moment. In either event it must

be held that title did pass from defendant to Smith and that defendant's taking of the casing was unlawful.

Defendant contends that plaintiff had an adequate remedy at law either by way of suit for damages or an action of replevin. Plaintiff needed the casing for completion of an oil well. It was not available on the open market and until time of trial he had been unable to buy any. Damages based upon some fixed market value of the casing would not adequately have compensated plaintiff because he could not have obtained other casing therewith. It would have been impossible to fix with a reasonable degree of certainty damages resulting from plaintiff's having been deprived of the use of his casing and his consequent inability to complete and operate the well whose potentialities could not then have been definitely ascertained. Under such circumstances a suit at law for damages affords no adequate remedy.

Defendant, doing business both in Grandville and at Muskegon, refused to disclose to plaintiff where it had put his casing. The casing could not be identified or distinguished from defendant's casing, with which it had been commingled. Had plaintiff replevied casing from defendant's stockpiles in Muskegon with which plaintiff's casing had not been commingled, defendant would have been entitled to a directed verdict. Had he replevied casing from the Grandville stockpiles, his situation would have been no different unless he could have established that some of his casing were still, at the time of replevy, in such stockpiles. Applicable here is the following from *LeDuc* v. *Schnepp,* 249 Mich. 622:

"At the time and place these 80 crates were replevined from the defendant he had in his possession two truck loads of berries. Those replevined were taken from one of the trucks only. There is

no proof in this record from which it is possible to determine what portion, if any, of these two truck loads of berries came from the lands in which plaintiff claims to have the berry rights.    *    *    *

"Defendant's motion for a directed verdict was denied. It should have been granted, because there was no evidence that the berries seized under the writ or any portion of the two truck loads of berries of which the 80 crates were a part were taken from plaintiff's lands.    *    *    *

"Prima facie he (defendant) was a bona fide owner of this property, and therefore, in view of the jury's verdict, entitled to recover its value from the plaintiff by whom it had been wrongfully replevined."

An action of replevin in which plaintiff must proceed at his peril to replevy casing which he cannot locate, identify or establish as being presently a part of any one of defendant's stockpiles does not afford plaintiff such an adequate remedy as to close to him the doors of chancery. The risk and burden of selecting and getting the right casing back to plaintiff should not be borne by plaintiff but by defendant whose wrongful action caused the difficulty, and a mandatory injunction alone will serve that end. *Baron* v. *Korn,* 127 N. Y. 224 (27 N. E. 804); *Norton* v. *Elwert,* 29 Ore. 583 (41 Pac. 926).

Plaintiff's undisputed testimony is that he suffered damages of at least $1,000 in connection with the moving of his drilling rig, necessitated by defendant's unlawful taking of plaintiff's casing. The $500 special damages decreed to be paid by defendant to plaintiff is well within the range of the proofs.

Decree affirmed, with costs to plaintiff.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred.